Acheson, Circuit Judge.
Taking the proofs as a whole, the transaction of October 31, 1889, between the plaintiff, Matthews, and the Lawrence Bank, cannot fairly be regarded as a purchase by the bank from the plaintiff of the Moorhead-McCleane Company mortgage. Neither of the parties understood or intended the transfer of the mortgage to be a sale thereof. As well the officers of the bank as the plaintiff himself believed that the financial embarrassment of the bank would be overcome, and we think it was in the contemplation of them all that the mortgage would he returned to the plaintiff after its temporary use to sustain the credit of the bank. Certainly it was the plaintiff’s expectation—well warranted by what the officers of the bank told him—that the mortgage would be retransferred to him shortly. It is, indeed, true that a certificate of deposit for the sum of $50,000, the principal (without the accrued interest) of the mortgage, was issued by the bank and delivered to the plaintiff; but it is quite clear from the evidence that this certificate was intended as a mere security to the plaintiff. As already intimated, the substantial nature of the transaction was a loan of the mortgage to aid temporarily the bank in its financial strait.
Turning now to the dealings between the Lawrence Bank and the Union National Bank, we find from the evidence that the latter was the clearing-house agent of the former bank, and that, for the purpose of securing any existing or future overdrafts by the Lawrence Bank of its clearing-house account with the Union Bank, the Lawrence Bank, by its president, on November 4, 1889, assigned the mortgage to the president of the Union Bank, in trust for that institution. While this assignment, upon its face, was unconditional, it is indisputable under the .proofs *689 that the transfer by the Lawrence Bank to the Union Bank was not a sale or absolute assignment of the mortgage, but a mere pledge, for the purpose just stated. At the time of this transfer the Lawrence Bank had overdrawn its clearing-house account to the amount of $14,915.39, and on November 8,1889, its overdrafts in all amounted to $57,108.38. On the last-mentioned date the Lawrence Bank assigned and delivered commercial paper owned by it, amounting to $25,769.49, to the Union Bank, as security for all its liabilities incurred or to be incurred to the Union Bank. Such was the condition of affairs when the Lawrence Bank, on November 25,1889, made its deed of voluntary assignment for the benefit of its creditors. Then, on December 2,1889, before the maturity of the mortgage, the Moorhead-McCleane Company, the mortgagor, voluntarily paid the principal thereof, with accrued interest, amounting to $52,350, to the Union Bank, and this money was credited by the Union Bank to the Lawrence Bank. Afterwards the Union Bank collected the commercial paper pledged with it by the Lawrence Bank, and, after applying so much of the proceeds as fully discharged all the remaining indebtedness of the Lawrence Bank, there was left in its hands a balance from these securities, amounting to about $21,000. This balance is claimed by the plaintiff, Matthews, by right of subrogation, and to enforce such right is the purpose of this bill.
Now, it is well settled that subrogation is not founded on contract, nor does it depend on strict suretyship, but it results from the natural justice of placing the burden where it ought to rest. It is a mode which equity adopts to compel the ultimate discharge of a debt by him who, in good conscience, ought to pay it, and relieve him whom none but the creditor could ask to pay. 2 White & T. Lead. Cas. 282; McCormick v. Irwin, 35 Pa. St. 111. The facts above narrated, we think, clearly bring this case within the operation of the rule, for, as between the Lawrence Bank and the plaintiff, the former was bound to pay the indebtedness to the Union Bank, and, as the plaintiff’s mortgage, pledged by the Lawrence Bank for its debt, has been applied to the discharge thereof, the plaintiff has, as against the Lawrence Bank, an equitable right to the surplus in the hands of the creditor arising from the other securities owned and pledged by the Lawrence Bank for the same debt. Nor can the Fidelity Title & Trust Company, the trustee under the deed of voluntary assignment for the benefit of creditors, successfully contest the plaintiff’s claim, for that company is clothed merely with the rights of the Lawrence Bank. Morris' Appeal, 88 Pa. St. 368. The cases cited by the defendant’s counsel to show that one who, without compulsion, obligation, or duty pays the debt of another, is not entitled to subrogation, have no application here, for the plaintiff was not a volunteer in the sense of those authorities. He was no more a volunteer than is any surety who, of his own free will, binds himself for the acts or debt of another.
But it is contended that, if the plaintiff ever had a right to subrogation, he lost it by claiming and receiving out of the general assets of the Lawrence Bank in the hands of the trustee a dividend amount *690 ing to $8,737.15, upon his certificate of deposit. But we cannot adopt that view. True, the plaintiff, on January 9, 1891, appeared as a claimant before the auditor appointed to distribute among the creditors of the Lawrence Bank the balance in the hands of the trustee under the deed of assignment upon its first and partial account, and as the foundation of his claim presented the certificate of deposit for $50,000, heretofore referred to. But at the same time he submitted to the auditor evidence similar to that now before us, explanatory of the whole transaction. All the facts were disclosed, and the allowance to him by the auditor of the dividend awarded was an adjudication of his right thereto upon all the evidence. Herein we perceive no ground of estoppel against Matthews. It is clear to us that he was at liberty to prove as a general creditor against the assigned estate in the hands of the trustee without prejudicing his rights in the specific fund in the hands of the Union Bank. He had a valid claim against the Lawrence Bank for $50,000 and upwards, which originated prior to the voluntary assignment. His proof before the auditor was by no means an abandonment of his right to subrogation. The case .did not involve an election, for the two claims were not inconsistent. If it appeared that the plaintiff had received a larger dividend than he was entitled to, we could so mold our decree as to do equity; but we do not see that he was allowed more than his proper share. He had, we think, a right to a pro rata dividend upon the full face of his claim, upon the principle that a creditor may so use his collaterals as to secure his whole debt. 1 Story, Eq. Jur. (12th Ed.) § 5645; Kittera’s Estate, 17 Pa. St. 416. Let a decree be drawn in favor of the plaintiff in accordance with the views expressed in this opinion.
Buffington, District Judge, concurs.