# CORNELIA BANK *v.* FIRST NATIONAL BANK OF QUITMAN.

No. 7567.   July 15, 1930.

**748**

*Harrell & Lilly,* for plaintiff. *Branch & Snow,* for defendant.

HINES, J. At the March term, 1929, of the city court of Quitman the Cornelia Bank obtained a judgment against S. O. Ingram. The execution issued on this judgment was levied upon a described tract of land containing 55 acres, more or less. The First National Bank of Quitman filed its claim to this land, and in aid thereof filed an equitable amendment in which it set up these facts: In the year 1926 the claimant was the owner of a tract of land in Brooks County, designated as the Alderman tract. At the same time Ingram owned two tracts of land, for convenience designated as tract No. 1 and tract No. 2. Each of said tracts was encumbered by a security deed in favor of Pearsons Taft Company (name afterward changed to Taft & Company), each debt for approximately the same sum. Tract No. 1 contained approximately 55 acres, and tract No. 2 contained approximately 78 acres. On November 26, 1926, the claimant sold to Ingram the Alderman tract, and in part payment of the purchase-price received from him a warranty deed to tract No. 2. The outstanding debt on tract No. 2 was for the principal sum of $1,200, and two installments of interest, one for $72.35, and the other for $78. Subsequently the claimant desired to discharge the lien on its land, and applied to Taft & Company to ascertain the amount which would be necessary to discharge the lien on tract No. 2. On receipt of this information the claimant, in November, 1928, paid to said company the indebtedness against said tract and requested that company to cancel the security deed thereon and forward the same to claimant. Instead of cancelling the security deed against tract No. 2, said company applied this payment in discharge of the lien of the security deed upon tract No. 1, canceled the deed on that tract, and forwarded it to the claimant. When claimant received the canceled security deed it assumed that the correct paper had been sent to it. Its officers neglected to examine the canceled instrument; but sent it to the clerk of the superior court for cancellation, and it was canceled of record on November 22, 1928. This left tract No. 1 free and clear of all liens and encumbrancess. Discovering that tract No. 1 was free and clear of all liens, the plaintiff, on March 18, 1929, caused the execution from its judgment to be levied upon said tract, and proceeded to advertise it for sale. Ingram was and is insolvent, and there was no other property on which the plaintiff

could enforce its judgment. The claimant sets up that it has an equitable lien upon tract No. 1 in the sum of $1,350.35, with interest, which it paid to Taft & Company, and which satisfied the indebtedness in favor of Taft & Company secured by the deed to tract No. 1; that in consequence it has been subrogated to the rights of Taft & Company under said security deed; and that said lien is superior to the lien of the Cornelia Bank. Claimant prays that tract No. 1 be sold, and out of the proceeds of the sale there be paid to it said sum, and that the balance, if any, be applied to the payment of the execution held by the Cornelia Bank.

The case was submitted to the trial judge, without a jury, upon an agreed statement of facts, from which the foregoing appears. The judge rendered judgment in favor of the claimant, holding that it was subrogated to the rights of Taft & Company under its security deed to tract No. 1; and ordered a sale and application of proceeds in accordance with the prayer of the amendment to the claim. To this judgment the plaintiff excepted upon the grounds: (a) that is contrary to the evidence; (b) that it is contrary to law; (c) that it is contrary to the principles of equity and justice; (d) that the court held as a matter of law that the claimant, although admitting that it was guilty of negligence in causing the wrong instrument to be canceled, and although indirectly responsible for the mistake, could yet come into a court of equity and obtain subrogation to all the rights and priorities of the original lienholder; (e) that the court held as a matter of law and equity that the bank was not guilty of such negligence as would prevent it from obtaining subrogation; (f) that the court held as a matter of law and equity that the bank was entitled to subrogation even though there was no agreement, express or implied, with the debtor or creditor to be subrogated to the rights of the original lienholder merely by the payment of a debt which the bank was in no wise bound to pay; (g) that the court held as a matter of law and equity that the bank, having discharged a lien upon property in which it had no interest, having paid an indebtedness which it was not bound to pay or even requested to pay, and upon which the plaintiff had a vested lien, was entitled to be subrogated to the lien of the holder of the security deed; (h) that the court held as a matter of law and equity that the bank, having paid an indebtedness of the defendant without the knowledge or consent of the

debtor, and having discharged a lien upon property on which it held no lien and in which it had no interest, and without any agreement, express or implied, with the debtor or creditor, was subrogated to the lien of the holder of the security deed paid off by it.

Subrogation is the substitution of another person in the place of a creditor, so that the person in whose favor it is exercised succeeds to the rights of the creditor. The substitute is put in all respects in the place of the party to whose rights he is subrogated. The doctrine is of equitable origin and benevolence. It is founded upon the dictates of refined justice. Its basis is the doing of complete, essential, and perfect justice between all the parties, without regard to form, and its object is the prevention of injustice. This right does not necessarily rest on contract or privity, but upon principles of natural equity, and does not depend upon the act of the creditor, but may be independent of both creditor and debtor. 37 Cyc. 363. The courts incline rather to extend than restrict the principle. The doctrine has been steadily growing and expanding in importance, and becoming general in its application to various subjects and classes of persons, the principle being modified to meet the circumstances of cases as they have arisen. The doctrine has been, under the original guidance of Chancellor Kent, applied much more extensively in American than in English jurisprudence. 37 Cyc. 373; Gowan v. Bland, 2 How. (Miss.) 813; Emmert v. Thompson, 49 Minn. 386 (32 Am. St. R. 566); Fernold v. State Bank, 44 Mo. 336; Snelling v. McIntyre, 6 Abb. N. C. (N. Y.) 469; Ipswich Bank v. Brock, 13 S. D. 409 (83 N. W. 436); Sands v. Durham, 99 Va. 263 (38 S. E. 145, 86 Am. St. R. 84, 54 L. R. A. 614). Subrogation is of two kinds. One is legal subrogation, which takes place as a matter of equity, without any agreement to that effect made with the person paying the debt. The other is conventional subrogation, which is applied where an agreement is made with the person paying the debt that he shall be subrogated to the rights and remedies of the original creditor. It is never applied for the benefit of a mere volunteer who pays the debt of another without any assignment or agreement for subrogation, and who is under no legal obligation to make the payment, and is not compelled to do so for the preservation of any rights or property of his own. *Wilkins v. Gibson,* 113 *Ga.* 31, 42 (38 S. E. 374, 84 Am. St. R. 204). It is insisted by counsel for the plaintiff that the claimant voluntarily

paid the indebtedness secured by the deed to tract No. 1, and that the transaction comes within the principle just announced. The payment of the indebtedness thus secured was in no sense voluntary. The claimant did not intend to pay this indebtedness. It sent to the creditor funds with which to pay the indebtedness secured by the deed to tract No. 2. Instead of applying the funds to the payment of this indebtedness and of the lien securing the same, the creditor applied this payment in extinguishment of the indebtedness secured by the deed to tract No. 1. In these circumstances it can not with any reason be held that the claimant voluntarily paid the indebtedness secured by the deed to tract No. 1. It is a case where the creditor used funds sent to it in payment of the debt secured by the deed to tract No. 2, in extinguishment of the indebtedness secured by the deed to tract No. 1. In other words, the creditor misapplied these funds. Instead of applying them to the payment of the debt secured by the deed to tract No. 2, and to the extinguishment of this deed, the creditor applied them in payment of the debt secured by the deed to tract No. 1 and canceled that instrument. In these circumstances it is clear that the claimant would be subrogated to the rights of the creditor under the security deed to tract No. 1.

Where the funds of another person are applied by a creditor to the satisfaction of a debt or encumbrance, without the consent of the owner of such funds, the owner is subrogated to the rights of the creditor or encumbrancer. "One whose property is applied by others to the satisfaction of a debt or encumbrance is subrogated to the rights of the creditor or encumbrancer; and subrogation may also be allowed where funds to which one is equitably entitled have been applied to the payment of debts of another, in which case the former is subrogated to the position of the latter." 37 Cyc. 467. In Ferguson v. Station, 19 Ky. L. R. 979 (42 S. W. 732), it was held that where the court erroneously appropriated the proceeds of collateral deposited by F. with the bank to secure a note which J. & Co. owed the bank, to the discharge of a mortgage debt of S. & P., J. & Co. were entitled to be substituted to the lien of S. & P. to the extent of the note to the bank which they had in the meantime paid off. In Mississippi &c. Canal Co. v. Noyes, 25 La. Ann. 62, it was held that where the money of plaintiff was appropriated to the payment of a judgment for which the owners of a

certain piece of property were liable, the payment of that judgment carried with it a legal subrogation of the plaintiff to that judgment. In Markillie v. Allen, 120 Mich. 360 (79 N. W. 568), it was held that where a fund equitably belonging to complainant was used to discharge a mortgage, equity would, if the circumstances required it, revive the lien, and subrogate complainant to the rights of the original mortgagee. In Coulter v. Minion, 139 Mich. 200 (102 N. W. 660), Minion, being the owner of a farm, negotiated an exchange for residence property with Lloyd, from whom he was to receive $250 in cash as the difference in value of the property. There was a mortgage of $1,200 upon the residence property, and the plan was for Lloyd to borrow $1,450 on the farm, of which $1,250 was to be applied to the mortgage, and the remainder was to go to Minion. Minion negotiated this loan with Mrs. Coulter, although only $1,250 was finally borrowed, Minion taking a second mortgage for $250 on the farm; and the deal was consummated. The $1,250 was used in paying off the mortgage on the residence property. The farm turned out to be of little value; and Lloyd abandoned it, as not worth his investment in it. Mrs. Coulter filed her bill asking that she be subrogated to the rights of the mortgagee on the residence property, who received her money by reason of Minion's fraud inducing her to take the mortgage. It was held that the complainant was entitled to subrogation to the rights of the holder of the mortgage on the property conveyed to her, which was satisfied by the proceeds of the loan so fraudulently negotiated by defendant.

In Webber v. Hausler, 77 Minn. 49 (79 N. W. 380), Webber entrusted to K. $1,000 to be loaned for him on a first mortgage on real estate. K., for the purpose of lending the money to himself without the knowledge of his principal, procured H. to execute to W. a note for $1,000 and a collateral mortgage on land owned by K., on which there was a prior mortgage of $1,000 to C., and then transmitted the note and mortgage to W., representing to him that it was a first mortgage and that H. had good title to the land. It was the intention and purpose of both H. and K. that the mortgage to W. should be a first mortgage, that before it was executed K. should convey the land to H., and that W's $1,000 should be applied in payment of C's mortgage; but by inadvertence and oversight of the parties no such conveyance was ever executed. K. had deposited

W's $1,000 in his own name in a bank in which he had an account, and afterwards checked it out and used it in his business. K. paid C's mortgage by check on another bank in which he also kept an account. This mortgage, although paid, was never satisfied of record. K. subsequently made a general assignment for the benefit of creditors. W's mortgage was never paid. It was held, that, as against the assignee and these creditors, W. was entitled to be subrogated to all C's rights under the prior mortgage. In Boice v. Conover, 69 N. J. Eq. 850 (61 Atl. 159), it was held that where a chattel mortgagee failed to comply with the recording acts, and the property was taken by a judgment creditor who had levied on the mortgaged chattels and on lands of the mortgagor, the mortgagee was entitled to be subrogated to the lien of the judgment on the payment thereof out of the proceeds of the sale. In Pelzer Mfg. Co. v. Pitts & Hartzoz, 76 S. C. 349 (57 S. E. 29), it was held that where a partner used the assets of his firm to pay his individual debt to a bank, secured by collateral, his firm was entitled to be subrogated to such note and collateral. In Oury v. Saunders, 77 Tex. 278 (13 S. W. 1030), it was held that where the vendee of land gave his note for the purchase-price, and afterwards paid the note from the proceeds of property belonging to his minor children, the latter became subrogated to the vendor's lien. In Young v. Pecos County, 46 Tex. Civ. App. 319 (101 S. W. 1056), it was held that a county was subrogated to the lien of the mortgagee under the mortgage, where the husband of the mortgagor used money held by him as county treasurer to pay the mortgage. In Matthews v. Fidelity &c. Co., 52 Fed. 687, the owner of a mortgage loaned it to a bank for temporary use, to sustain its credit when in a financial strait. The bank pledged the mortgage to a creditor as collateral security, and subsequently pledged with the same creditor commercial paper owned by it as collateral security for the same debt. The bank afterwards made an assignment for the benefit of creditors. The mortgagor then voluntarily paid the mortgage to the pledgee, who applied the money towards the debt of the bank. The pledgee collected the commercial paper, and after full satisfaction there remained a balance therefrom in the pledgee's hands. It was held that by right of subrogation the mortgagor was entitled to this balance, as against a voluntary assignee.

In Colton v. Dacey, 61 Fed. 481, it was held that one who

entrusts to an agent money to be invested in land, where the agent fraudulently uses the money to pay off a mortgage on certain land belonging to a corporation organized by the agent, may, on discovering the fraud, be subrogated to the rights of the mortgagee. In Farmers Loan & Trust Co. *v.* Detroit &c. Co., 71 Fed. 29, it was held that where the receiver by order of court paid, out of moneys to which the bondholders were entitled, the wages of the employees, and likewise taxes constituting a first lien on the property, the bondholders were entitled to be subrogated to the priorities of the employees and the State. So in *Byrom* v. *Gunn,* 102 *Ga.* 565 (31 S. E. 560), where a husband mingled funds of his own, funds belonging to his wife, and funds belonging to a ward, and indiscriminately used them in divers real-estate transactions in the course of which he made numerous purchases, sales, and reinvestments, sometimes taking title to the property thus bought in his own name, and at other times in his name as trustee for the wife; and where, as an outcome of all these operations, it finally resulted that she obtained against him, in an equitable proceeding in which the ward was not represented, a judgment establishing in the wife, as against the husband, the title to a considerable amount of realty, consisting of various separate parcels, titles to which he had taken in both of the ways above indicated, and into which as a whole the funds of the ward were traceable, though it was impossible to ascertain how much of any of these funds went into any particular parcel; and where in the above-mentioned transactions, which took place prior to the rendition of such judgment, the husband was acting as agent for the wife, and he and she collusively procured that judgment to be rendered for the purpose of hindering, delaying, and defrauding creditors,—it was held that all the property covered by such judgment could lawfully be subjected to satisfaction of the ward's claim against the husband, in so far as the same resulted in the misappropriation of the ward's money; but it was further held that there was no error in providing, in the judgment rendered, for a subrogation of the wife, in the contingency therein stated, to the right of the present guardian to receive any sum thereafter collected upon the claim which the former guardian had failed to collect.

So we are of the opinion that where the claimant purchased from the defendant in execution tract No. 2 and assumed the payment of

the indebtedness to Taft & Company, secured by the defendant's deed to said tract, and where the claimant sent to this creditor funds with which to pay such indebtedness and to obtain a cancellation of this deed, and where the creditor, without the consent of the claimant, applied such funds to the payment of the indebtedness secured by the deed to tract No. 1, the claimant is entitled to be subrogated to the rights of the creditor under the deed to tract No. 1. In the circumstances the claimant was not a mere volunteer. It is insisted that the claimant is not entitled to such subrogation, because of its negligence in not discovering that the creditor had canceled its deed to tract No. 1, and in having said deed canceled of record without ascertaining that the wrong instrument was canceled. In *Wilkins* v. *Gibson,* supra, it was held that culpable and inexcusable neglect might defeat the right of subrogation. Under the facts of this case it does not appear that the claimant was chargeable with such neglect, and that for this reason its right to subrogation under the facts of this case should be denied.

*Judgment affirmed. All the Justices concur.*