In the Matter of CAVALIER HOMES
OF GEORGIA, INC., Debtor.

J. Coleman TIDWELL,
Trustee, Plaintiff,

v.

AMSOUTH BANK, N.A., Jerry F. Wilson,
William L. Godwin, D.G. Parker,
Charles A. Dempsey, and R. Larry
Culp, Defendants.

Bankruptcy No. 86–50187.
Adv. No. 87–5041.

United States Bankruptcy Court,
M.D. Georgia,
Macon Division.

July 14, 1989.

Thomas W. Talbot of Talbot & Ladson, Macon, Ga., for plaintiff.

William B. Hairston, Jr. of Engel, Hairston & Johanson, Birmingham, Ala., for defendant AmSouth Bank.

P. Steven Kratsch of Smith, Gambrell & Russell, Atlanta, Ga., for defendants Jerry F. Wilson, William L. Godwin, D.G. Parker, Charles A. Dempsey, and R. Larry Culp.

## MEMORANDUM OPINION ON COMPLAINT TO AVOID PREFERENTIAL TRANSFERS

ROBERT F. HERSHNER, Jr., Chief Judge.

### STATEMENT OF THE CASE

An involuntary petition under Chapter 7 of the Bankruptcy Code was filed against Cavalier Homes of Georgia, Inc., Debtor, on January 31, 1986. The Court entered an order for relief against Debtor on March 6, 1986.

On June 2, 1987, J. Coleman Tidwell, Trustee, Plaintiff, filed a complaint against AmSouth Bank, N.A., Defendant, and Jerry F. Wilson, William L. Godwin, D.G. Parker, Charles A. Dempsey, and R. Larry Culp, hereinafter Individual Defendants. Plaintiff's complaint asserts that AmSouth Bank received payments which constitute preferences under section 547 of the Bankruptcy Code.[1] Plaintiff also asserts that Debtor is subrogated to the rights AmSouth Bank may have against Individual Defendants arising from certain payments made by Debtor. Defendants timely responded to the complaint. Plaintiff subsequently filed a motion to amend his complaint on March 25, 1988, which was granted on April 7, 1988. All Defendants filed timely responses to the amended complaint. Plaintiff's amended complaint asserts that AmSouth Bank received payments from Debtor which constitute fraudulent transfers under section 548 of the Bankruptcy Code.[2] Plaintiff also asserts that certain payments by Debtor to AmSouth Bank constitute preferential transfers for the benefit of Individual Defendants under section 547(b) of the Bankruptcy Code.[3]

A trial on this adversary proceeding was held on April 11, 1989. The Court, having considered the arguments of counsel and the evidence presented at trial, now publishes its findings of fact and conclusions of law.

### FINDINGS OF FACT

On December 29, 1983, the Development Authority of Jones County (hereinafter Development Authority) issued an industrial revenue bond for $800,000 in favor of AmSouth Bank as part of a project financing transaction. As part of the transaction, Individual Defendants executed a promissory note for $800,000 payable to the Development Authority. The promissory note required Individual Defendants to pay sufficient moneys to pay the principal and interest on the Bond as it became due. The promissory note was assigned by the Development Authority to AmSouth Bank.

Also as part of the transaction, Debtor executed a guaranty agreement in favor of AmSouth Bank for $800,000 guaranteeing repayment of the principal, interest, and other amounts due AmSouth Bank under the Bond. Debtor also executed a financing agreement to AmSouth Bank giving AmSouth Bank a validly perfected security interest in those items of collateral listed in the security agreement. The financing agreement provided that AmSouth Bank would, at its discretion, advance Debtor up to eighty percent of the net amount of Debtor's warranted accounts receivable not to exceed $500,000.

The promissory note which was executed by Individual Defendants and assigned by the Development Authority to AmSouth Bank was never in default and all payments were current on the day of trial. On June 25, 1985, all primary obligations owed by Debtor to AmSouth Bank were paid in full. After June 25, 1985, there remained a secondary obligation from Debtor to AmSouth Bank by virtue of the guaranty agreement which Debtor executed on the Bond. Between June 26, 1985 and February 13, 1986, AmSouth Bank received, under the financing agreement, certain payments. These funds came from the collection of Debtor's accounts receivable which were assigned to AmSouth Bank under the financing agreement.

---

1. 11 U.S.C.A. § 547 (West 1979 & Supp.1989).

2. 11 U.S.C.A. § 548 (West 1979 & Supp.1989).

3. 11 U.S.C.A. § 547 (West 1979 & Supp.1989).

The payments were received by AmSouth Bank in this fashion:

| Date Received | Amount |
| --- | --- |
| July 12, 1985 | $ 17,356.75 |
| September 4, 1985 | 17,793.00 |
| September 4, 1985 | 11,919.46 |
| September 24, 1985 | 22,646.70 |
| September 27, 1985 | 15,560.10 |
| October 21, 1985 | 14,589.00 |
| October 21, 1985 | 21,716.10 |
| February 13, 1986 | 15,928.20 |
| Date unknown [4] | 9,000.00 |
| Total | $146,509.31 |

These payments were applied against the obligation owed by individual Defendants on account of the assignment of the promissory note. Part of the debt owed to AmSouth Bank by Individual Defendants remained unsatisfied at the time of trial. AmSouth Bank did not make any further advances to Debtor after May 28, 1985. Debtor was insolvent on June 26, 1985.

Each Individual Defendant was a creditor of Debtor as Debtor owed each money under the terms of a lease agreement. Three Individual Defendants were also directors, officers, or both of Debtor. Debtor leased its facilities and equipment from Gray Management Company for $12,500 per month. The five Individual Defendants were the owners of Gray Management Company. Individual Defendants leased Debtor's facility to a new tenant under a lease executed on August 6, 1985 for $14,000 per month. The new tenant's first rent payment was, under the terms of the lease, due as of August 1, 1985. The new tenant paid the rent for August and September 1985. Debtor had closed down and was not operating at that time.

## CONCLUSIONS OF LAW

In Count One of the complaint, Plaintiff alleges that within one year before the filing of the petition in bankruptcy, Debtor transferred certain sums to AmSouth Bank which constitute preferences. Plaintiff seeks an order avoiding the transfers to AmSouth Bank under section 547(b) of the Bankruptcy Code.[5] Section 547(b) provides:

(b) Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property—

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—

(A) on or within 90 days before the date of the filing of the petition; or

(B) between ninety days and one year before the date of the filing of the petition if such creditor at the time of such transfer was an insider; and

(5) that enables such creditor to receive more than such creditor would receive if—

(A) the case were a case under chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

11 U.S.C.A. § 547(b) (West 1979 & Supp. 1989). Plaintiff has the burden of proving these elements. 11 U.S.C.A. § 547(g) (West Supp.1989). *See also Tidwell v. Fickling & Walker Insurance Agency, Inc. (In re Georgia Steel, Inc.)*, 58 B.R. 153, 156 n. 4 (Bankr.M.D.Ga.1984) (citing *Meyers v. Vermont National Bank (In re The Music House, Inc.)*, 11 Bankr. 139 (Bankr.D.Vt.1980)). The Court finds that Plaintiff has met his burden with regards to the first and third elements. The parties stipulated at the trial that AmSouth Bank received the payments from Debtor after Debtor was insolvent.

The fourth element of a preferential transfer requires Plaintiff to prove that the transfer was made on or within ninety days before the date of the filing of the petition unless the creditor was an in-

---

**4.** The parties stipulated that this date was after June 26, 1985.

**5.** 11 U.S.C.A. § 547(b) (West 1979 & Supp.1989).

sider at the time of the transfer. *See* 11 U.S.C.A. § 547(b)(4) (West Supp.1989). The first way this element can be satisfied is for Plaintiff to show that the transfers occurred on or within ninety days before the date the petition was filed.[6] The transfers in question were made on July 12, 1985, September 4, 1985, September 24, 1985, September 27, 1985, October 21, 1985, February 13, 1986, and on an unknown date after June 26, 1985. The bankruptcy petition was filed on January 31, 1986; therefore the ninety-day preference period began on November 3, 1985.[7] None of the transfers occurred within the ninety-day period before the petition was filed. The court concludes that Plaintiff has failed to carry his burden of showing that the transfers occurred on or within ninety days before the petition was filed.

The second way the fourth element of a preference can be satisfied is for Plaintiff to show that the transfers were made between ninety days and one year before the petition was filed and that AmSouth Bank was an insider at the time of the transfer. The facts show that all but two of the transfers were made within the required period. The February 13, 1986 transfer was made after the petition was filed. Plaintiff did not prove when the Date Unknown transfer was made.

Plaintiff also must show that AmSouth was an insider. Section 101(30)(B) of the Bankruptcy Code provides that an insider includes:

(B) if the debtor is a corporation—

(i) director of the debtor;

(ii) officer of the debtor;

(iii) person in control of the debtor;

(iv) partnership in which the debtor is a general partner;

(v) general partner of the debtor; or

(vi) relative of a general partner, director, officer, or person in control of the debtor;

11 U.S.C.A. § 101(30)(B) (West Supp.1989). For purposes of the Bankruptcy Code, an insider is an entity or person with "a sufficiently close relationship with the debtor that his conduct is made subject to closer scrutiny than those dealing at arm's length with the debtor." *Lingley v. Stuart Shaines, Inc. (In re Acme–Bunham, Inc.),* 50 B.R. 734, 739 (D.C.Me.1985) (quoting S.Rep. No. 95–989, 95th Cong. 2nd Sess., *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, 5810). The determination of insider status is a question of fact which must be decided on a case-by-case basis. *See Lingley* at 739. Plaintiff contends that AmSouth Bank was an insider because of its intimate involvement with the finances of Debtor. The facts show that AmSouth Bank required Debtor to submit frequent, periodic reports on Debtor's accounts receivable, invoices, inventory, sales journals, and delivery schedules. In addition, AmSouth Bank received all payments on Debtor's accounts receivable, endorsed customer checks on behalf of Debtor and deposited the checks to Debtor's account at AmSouth Bank. AmSouth Bank, however, contends that its control was purely that of an arms-length creditor-debtor relationship.

Plaintiff has not shown that AmSouth Bank exercised any managerial control over Debtor or required that Debtor obtain its advice or consent before exercising managerial decisions. Debtor was not required to obtain prior approval from AmSouth Bank for decisions made in the ordinary course of business.

■ The exercise of financial control of a creditor over a debtor incident to a creditor-debtor relationship does not make the creditor an insider even though a creditor may obtain some concessions from the

---

**6.** The preference period is measured from the date the involuntary petition is filed, not the date the order for relief is entered. *See Manson Billard, Inc. v. Hoffman Industries, Inc. (In re Manson Billard, Inc.),* 82 B.R. 769, 773 (Bankr.E.D.Pa.1988). *See also General Office Furniture Wholesalers, Inc. v. Glenn Smith Associates, Inc. (In re General Office Furniture Wholesalers,*

*Inc.),* 37 B.R. 180, 183 (Bankr.E.D.Va.1984); *Seidle v. Kwik Copy, Inc. (In re Belize Airways, Ltd.),* 18 B.R. 485 (Bankr.S.D.Fla.1982).

**7.** In computing the ninety-day period, the day of the event is not included, but the last day of the period is included. *See* R. Bankr. P. 9006(a).

debtor based on the relationship. The debtor could find another lending institution, pay off the loan and terminate the relationship at any time. *See Markowitz v. Heritage Bank, N.A. (In re Jefferson Mortgage Co.),* 25 B.R. 963, 970 (Bankr.D.N.J.1982); *See also Schick Oil & Gas Inc. v. Federal Deposit Insurance Corp. (In re Schick Oil & Gas, Inc.),* 35 B.R. 282, 285–86 (Bankr. W.D.Okla.1983).

The Court finds that Plaintiff has failed to carry his burden of showing that AmSouth Bank was an insider. Because Plaintiff has failed to prove the fourth element of a preferential transfer, the Court does not need to consider the remaining elements.

■ In Count Two of the Complaint, Plaintiff alleges that Debtor is subrogated to the rights of AmSouth Bank because Debtor, as guarantor, made payments which were applied by AmSouth Bank towards the Individual Defendants' liability on the promissory note. The facts show that $137,509.31 was applied against the promissory note between June 26, 1985 and February 13, 1986. The Date Unknown transfer of $9,000 also was applied after June 26, 1985. The promissory note was never in default.

Resolution of a guarantor's right to subrogation hinges on state law. A guarantor's rights against the maker of a promissory note are stated in section 11–3–415(5) of the Official Code of Georgia.[8] Section 11–3–415(5) provides:

> An accommodation party is not liable to the party accommodated, and if he pays the instrument has a right of recourse on the instrument against such party.

O.C.G.A. § 11–3–415(5) (1982). Individual Defendants claim that Plaintiff is not entitled to subrogation because part of their debt to AmSouth Bank is still outstanding. The Court of Appeals of Georgia addressed this contention in *Jessee v. First National Bank of Atlanta.*[9] In *Jessee,* the court said: "Subrogation inures only to a surety who has paid the debt of his principal. Code Ch. 103–5. Where less than the total amount of that debt is tendered, subrogation is not permitted."[10]

■ Subrogation is the substitution of another person in the place of the creditor, so that the person in whose favor it is exercised succeeds to all the rights of the creditor. *Hill v. Shaw,* 62 Ga.App. 757, 9 S.E.2d 850, 852 (1940) (quoting *Cornelia Bank v. First National Bank of Quitman,* 170 Ga. 747, 154 S.E. 234 (1930)). Subrogation does not assume the continued existence of the debt but follows upon its payment. *See Maryland Casualty Co. v. Brown,* 321 F.Supp. 309, 312 (N.D.Ga. 1971).

■ The facts show that part of the debt owed to AmSouth Bank remained unsatisfied at the time of trial. Plaintiff argues that subrogation is synonymous with a right to reimbursement. Plaintiff has not, however, shown any support for his contention. This Court believes reimbursement simply means a right to be repaid. Subrogation, however, entitles the guarantor to take the place of the creditor and to have the creditor's rights against the principal and any security held by the creditor. *See e.g. Jessee* at 210, 267 S.E.2d at 805. The Court is not persuaded that reimbursement is synonymous with subrogation. The Court finds that Debtor is not entitled to subrogation against Individual Defendants and Plaintiff therefore cannot recover on this theory.

■ In Count Three of the Complaint, Plaintiff alleges that the transfer of certain funds from Debtor to AmSouth Bank was without consideration and constituted a fraudulent transfer. Section 548(a)(2)(A) and (B)(i) of the Bankruptcy Code[11] provides:

> (a) The trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within

---

**8.** O.C.G.A. § 11–3–415(5) (1982).

**9.** 154 Ga.App. 209, 267 S.E.2d 803 (1980).

**10.** *Id.* at 210, 267 S.E.2d at 805.

**11.** 11 U.S.C.A. § 548(a)(2)(A) and (B)(i) (West Supp.1989).

one year before the date of the filing of the petition, if the debtor voluntarily or involuntarily—

. . . .

(2)(A) received less than a reasonably equivalent value in exchange for such transfer or obligation; and

(B)(i) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;

11 U.S.C.A. § 548(a)(2) and (B)(i) (West Supp.1989). To establish a fraudulent transfer under section 548(a)(2), five elements must be proven:

(1) that an interest of the debtor in property;

(2) was voluntarily or involuntarily transferred;

(3) within one year of the date of filing the petition;

(4) that the debtor received less than a reasonably equivalent value; and,

(5) that the debtor was insolvent at the time of the transfer, or became insolvent as a result thereof.

*In re Ristich,* 57 B.R. 568, 574 (Bankr.N.D. Ill.1986).

The facts show that $121,581.11 [12] was transferred from Debtor to AmSouth Bank within one year before the petition was filed. Debtor was insolvent when these transfers were made. The only remaining question under section 548(a)(2) is whether Debtor received reasonably equivalent value for the transfers.

In determining whether a debtor received reasonably equivalent value, the court in *Vadnais Lumber Supply, Inc. v. Byrne (In re Vadnais Lumber Supply, Inc.)* [13] stated:

Where, as here, an actual intent to defraud creditors is not alleged, the plaintiff must prove that the "debtor . . .

received less than a reasonably equivalent value" in the exchange. S 548(a)(2)(A). Two things are clear from this language. The debtor must receive the required value, not some third party. E.g. *Klein v. Tabatchnick,* 418 F.Supp. 1368 (S.D.N.Y.1976). And, unlike the doctrine of consideration in contract law, that value must pass a measurement test. In applying the test, we must examine all aspects of the transaction in order to measure carefully the value of all its benefits and burdens to the Debtor, direct or indirect. *Rubin v. Mfr. Hanover Trust Co.,* 661 F.2d 979 (2d Cir.1981). [14]

■ Plaintiff argues that no value flowed to Debtor because there was no default under the Bond, promissory note, guaranty agreement or any other document. Individual Defendants argue that Debtor received value because its contingent obligation as guarantor was reduced by the transfers.

Section 548(d)(2)(A) of the Bankruptcy Code [15] defines value as follows:

(2) In this section—

(A) "value" means property, or satisfaction or securing of a present or antecedent debt of the debtor, but does not include an unperformed promise to furnish support to the debtor or to a relative of the debtor;

11 U.S.C.A. § 548(d)(2)(A) (West Supp. 1989).

Neither party alleges that Debtor received any property or satisfaction of a present debt. Thus whether Debtor received value turns on whether an antecedent debt of Debtor was satisfied by the transfers.

Although "antecedent debt" is not defined by the Code, essentially a debt is "antecedent" if it is incurred before the transfer. 4 *Collier on Bankruptcy*

---

**12.** This is the sum of the payments received on July 12, September 4, September 24, September 27, and October 21, 1985. The payments received on February 13, 1986 and Date Unknown were not proven to have been transfers made within the one year before the filing of the petition.

**13.** 100 B.R. 127 (Bankr.D.Mass.1989).

**14.** *Id.*

**15.** 11 U.S.C.A. § 548(d)(2)(A) (West Supp.1989).

¶ 547.05 (15th ed. 1989). Antecedent debt may be described as a debt preexisting or prior to the transfer. *See Henderson v. Allred (In re Western World Funding, Inc.)*, 54 B.R. 470, 476 (Bankr.D.Nev.1985).

A debt is a liability on a claim.[16] A claim includes a right to payment whether or not such right is contingent, unmatured, disputed or secured.[17] An antecedent debt arises once the debtor borrows the money or signs the agreement even though repayment may be postponed or contingent. *See Boone v. Marlatt (In re Day Telecommunications, Inc.)*, 70 B.R. 904, 909 (Bankr.E. D.N.C.1987); *Kallen v. Litas*, 47 B.R. 977, 982–83 (N.D.Ill.1985); *Sunset Enterprises, Inc. v. B & B Coal Co.*, 38 B.R. 712, 717 (Bankr.W.D.Va.1984). This Court believes that the reduction of Debtor's contingent liability constituted transfers on account of an antecedent debt and that Debtor received value as required by section 548(d)(2)(A).

■ The second question to consider is whether the value received was of a reasonably equivalent nature. The critical factor in considering reasonably equivalent value is what did the debtor receive in return for the transfer. Reasonable equivalent should depend on the facts of each case. *Bundles v. Baker (In re Baker)*, 856 F.2d 815, 824 (7th Cir.1988); *see also General Industries, Inc. v. Shea (In re General Industries, Inc.)*, 79 B.R. 124, 132 (Bankr.D.Mass.1987). By collecting Debtor's accounts receivable, AmSouth Bank received $146,509.31. This transfer reduced the balance due on the promissory note and Bond by the same amount. Debtor, therefore, had its contingent liability on its guaranty reduced. This Court believes that Debtor received a reasonably equivalent value for the transfers. This Court finds that Plaintiff has failed to carry his burden of showing the transfers to AmSouth Bank were fraudulent conveyances as to that Defendant.

In Count Four of the Complaint, Plaintiff alleges a preferential transfer cause of action against Individual Defendants. Each Individual Defendant was a creditor of Debtor.[18] Individual Defendants benefited because the transfers reduced their liabilities as comakers of the promissory note assigned to AmSouth Bank. Debtor's insolvency was stipulated by the parties.

■ Plaintiff must show that the transfers were for or on account of an antecedent debt owed by the debtor before the transfers were made. Although the Bankruptcy Code does not define when a debtor incurs a debt, the definitions of debt and claim help answer that question. Debt is defined as liability on a claim.[19] Claim means, in relevant part, "the right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." 11 U.S.C.A. § 101(4)(A) (West 1979). On its face, section 101(4)(A) indicates a congressional intent to broadly define claim. Under the Bankruptcy Code's broad definition of claim, all legal obligations of the debtor, no matter how remote or contingent, will be able to be dealt with in the bankruptcy case. *See Energy Cooperative, Inc. v. Socap International, Ltd. (In re Energy Cooperative, Inc.)*, 832 F.2d 997, 1001 (7th Cir.1987).

The court in *Energy Cooperative* stated:

By defining a debt as a "liability on a claim," Congress gave debt the same broad meaning it gave claim. Furthermore, "the concepts of debt and claim are coextensive: a creditor has a 'claim' against the debtor; the debtor owes a 'debt' to the creditor." Senate Report at 23, 1978 U.S.Code Cong. & Ad.News at 5809; *see also* House Report at 310, 1978 U.S.Code Cong. & Ad.News at 6267. In other words, when a creditor has a claim

---

16. 11 U.S.C.A. § 101(11) (West 1979).

17. 11 U.S.C.A. § 101(4)(A) (West 1979).

18. Individual Defendants were partners in Gray Management Company. Debtor leased its facility from Gray Management Company for $12,-

500 per month. Debtor was indebted to Individual Defendants for three monthly payments totaling $37,500.

19. 11 U.S.C.A. § 101(11) (West 1979).

against a debtor—even if the claim is unliquidated, unfixed, or contingent—the debtor has incurred a debt to the creditor. *See In re Vasu Fabrics, Inc.*, 39 B.R. 513, 516–17 (Bankr.S.D.N.Y.1984).[20]

■ AmSouth Bank's contingent claim against Debtor arose when Debtor executed the guaranty agreement on December 29, 1983. Debtor incurred a debt to AmSouth Bank by virtue of the agreement. The debt is an antecedent debt because it was incurred before the transfers were made in 1985 and 1986.[21]

■ The fourth element requires Plaintiff to show that the transfers were made between ninety days and one year before the petition was filed and that Individual Defendants were insiders at the time of the transfer.[22] The facts show that all transfers, except the February 13, 1986 transfer and the Date unknown transfer, were made within the required period. Plaintiff must now show which, if any, of Individual Defendants were insiders.

Section 101(30)(B) of the Bankruptcy Code[23] provides that an insider includes a director, officer, or person in control of a debtor corporation. The language of section 547(b)(4)(B) clearly states that an insider relationship is to be determined on the *exact date* of the challenged transfer. *Dent v. Martin*, 86 B.R. 290, 292 (Bankr.S.D.Fla.1988) (quoting *McWilliams v. Gordon (In re Camp Rockhill, Inc.)*, 12 B.R. 829, 834 (Bankr.E.D.Pa.1981)) (emphasis in original).

The facts show that Individual Defendants Jerry F. Wilson, William L. Gordon, and Charles A. Dempsey were directors, officers or both of Debtor during the one year preference period. The Court concludes that these three defendants were

insiders for purposes of section 547(b)(4)(B).

The facts fail to show that either Individual Defendants D.G. Parker or Larry Culp was an officer, director, or general or limited partner of Debtor. Since these two defendants are neither directors nor officers of Debtor corporation, Plaintiff must prove that they met the test of a person in control of Debtor under section 101(25)(B)(iii). Individual Defendant Wilson testified at trial that he was one of five individuals that formed Debtor in December 1983. Mr. Wilson testified that he owned 250 shares of Debtor's stock.

The Court in *In re Yonkers Hamilton Sanitarium, Inc.*,[24] stated:

The persons who might be expected to control a corporate debtor are its officers, directors and substantial stockholders. Thus, aside from officers and directors, a person is an insider if that person meets the test of an "affiliate" [§ 101(25)(E)] under Code § 101(2)(A) and:

"... directly or indirectly owns, controls, or holds with power to vote, 20 per cent or more of the outstanding voting securities of the debtor ...",

The Legislative History with respect to the definition of "affiliate" reveals that this term is defined primarily for use in the definition of an insider. *House Report No. 95–595*, 95th Cong. 1st Sess. (1977) 309 U.S.Code Cong. & Admin. News 1978, p. 5787.[25]

Plaintiff has not shown that Mr. Parker or Mr. Culp were shareholders when the transfers were made. Nor has Plaintiff shown any acts by which Mr. Parker or Mr. Culp controlled Debtor. This Court finds that Plaintiff has failed to carry his burden on this element concerning Mr. Parker or

---

**20.** 832 F.2d at 1001.

**21.** *See* 4 *Collier on Bankruptcy* ¶ 547.05 (15th ed. 1989) (a debt is antecedent if it is incurred before the transfer); *Henderson v. Allied (In re Western World Funding, Inc.)*, 54 Bankr. 470, 476 (Bankr.D.Nev.1985) (antecedent debt may be described as a debt preexisting or prior to the transfer).

**22.** This Court has previously determined that none of the transfers occurred within the ninety-day period before the petition was filed.

**23.** *See* 11 U.S.C.A. § 101(30)(B) (West Supp. 1989).

**24.** 22 B.R. 427 (Bankr.S.D.N.Y.1982), *aff'd,* 34 B.R. 385 (S.D.N.Y.1983).

**25.** *Id.* at 430.

Mr. Culp. The Court does not need to consider the remaining elements with respect to them.

▇ The final element Plaintiff must prove with respect to Mr. Wilson, Mr. Gordon and Mr. Dempsey is that the "creditor received more than it would if the case were a chapter 7 liquidation case, the transfer had not been made, and the creditor received payment of the debt to the extent provided by the provisions of the Code." 11 U.S.C.A. § 547(b)(5) (West 1979); 4 *Collier on Bankruptcy* ¶ 547.08 (15th ed. 1987). Under this test, a creditor is charged with the value of the transferred property plus the value of the amount he would be entitled to receive in a distribution under Chapter 7. *Elliott v. Frontier Properties (In re Lewis W. Shurtleff, Inc.)*, 778 F.2d 1416, 1421 (9th Cir.1985). The Supreme Court in *Palmer Clay Products Co. v. Brown* [26] explained the application of this test as follows:

> Whether a creditor has received a preference is to be determined, not by what the situation would have been if the debtor's assets had been liquidated and distributed among his creditors at the time the alleged preferential payment was made, but by the actual effect of the payment as determined when bankruptcy results. The payment on account of say 10% within the four months will necessarily result in such creditor receiving a greater percentage than other creditors, if the distribution in bankruptcy is less than 100%. For where the creditor's claim is $10,000, the payment on account $1000, and the distribution in bankruptcy 50%, the creditor to whom the payment on account is made receives $5500, while another creditor to whom the same amount was owing and no payment on account was made will receive only $5000. A payment which enables the creditor "to obtain a greater percentage of his debt than any other of such creditors of the same class" is a preference.[27]

Section 547(b)(5) codifies this ruling of the Supreme Court. 4 *Collier on Bankruptcy* ¶ 547.08 (15th ed. 1987).

▇ Debtor listed in its schedules nonpriority unsecured debts totaling $868,-448.86. The Trustee reports there are no funds in this case for distribution. Since Mr. Wilson, Mr. Godwin, and Mr. Dempsey had their individual liability to AmSouth Bank reduced by the transfers, it is clear that they were preferred over other unsecured claimants.

▇ Unless the assets are sufficient to provide in liquidation a one hundred percent distribution to the unsecured creditors, any creditor holding an unsecured claim who received a partial payment during the preference period is in a position to receive more than he would have in a Chapter 7 liquidation. *Utility Stationery Stores, Inc. v. American Portfolio (In re Utility Stationery Stores, Inc.)*, 12 B.R. 170, 179 (Bankr.N.D.Ill.1981). *See also In re Lewis*, 778 F.2d at 1421; *Rovzar v. Chemical Sales and Service Co. (In re Saco Local Development Corp.)*, 30 B.R. 862, 865–66 (Bankr.D.Me.1983).

Since the transfers allowed the three Individual Defendants to receive more than they would have received in a Chapter 7 distribution, all of the elements of a preferential transfer have been met.

▇ Having determined that certain transfers are preferences, the Court will address the issue of which parties are liable for the avoided transfers. Recovery of an avoided preference is provided for in section 550 of the Bankruptcy Code.[28] Section 550 provides, in pertinent part:

> (a) Except as otherwise provided in this section, to the extent that a transfer is avoided under section 544, 545, 547, 548, 549, 553(b), or 724(a) of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from—

---

**26.** 297 U.S. 227, 56 S.Ct. 450, 80 L.Ed. 655 (1936).

**27.** *Id.* 297 U.S. at 229, 56 S.Ct. at 451.

**28.** 11 U.S.C.A. § 550 (West 1979 & Supp.1989).

(1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or

(2) any immediate or mediate transferee of such initial transferee.

(b) The trustee may not recover under section (a)(2) of this section from—

(1) a transferee that takes for value, including satisfaction or securing of a present or antecedent debt, in good faith, and without knowledge of the voidability of the transfer avoided; or

(2) any immediate or mediate good faith transferee of such transferee.

(c) The trustee is entitled to only a single satisfaction under subsection (a) of this section.

11 U.S.C.A. § 550(a)–(c) (West 1979 & Supp.1989).

The initial transferee is AmSouth Bank. The entities which benefited from the transfers are Mr. Wilson, Mr. Godwin, and Mr. Dempsey. The Court must now determine whether recovery for the preferential transfers is appropriate against AmSouth Bank. The Court is well aware of decisions from other Bankruptcy Courts which have held that it is inequitable to allow recovery from a noninsider creditor of transfers during the expanded preference period. *See Ray v. City Bank & Trust Co. (In re C–L Cartage Co.)*, 70 B.R. 928 (Bankr.E.D. Tenn.1987); *In re Aerco Metals, Inc.*, 60 B.R. 77 (Bankr.N.D.Tex.1985); *Schmitt v. Equibank (In re R.A. Beck Builder)*, 34 B.R. 888 (Bankr.W.D.Pa.1983).

■ This Court, however, believes that recovery is proper against AmSouth Bank for two reasons. First, the application of the literal provisions of the statute clearly allows recovery from the initial transferee, AmSouth Bank. Courts must apply the law as enacted by Congress. The statutory language clearly expresses congressional intent, and, in the absence of any ambiguity, a court may not read another meaning into the statute to arrive at a more preferable result. *See Costal Petroleum Corp. v. Union Bank & Trust Co. (In re Costal Petroleum Corp.)*, 91 B.R. 35, 38 (Bankr.N.D.Ohio 1988); *Levit v. Ingersoll Rand Financial Corp. (In re V.N. Deprizio Construction Co.)*, 86 B.R. 545 (Bankr.N.D.Ill.1988); *Mixon v. Mid–Continent Systems, Inc. (In re Big Three Transportation, Inc.)*, 41 B.R. 16 (Bankr. W.D.Ark.1983).

Second, courts which have chosen not to follow the letter of section 550(a)(1) have done so on equitable grounds. This Court notes, however, that AmSouth Bank was not an innocent bystander in this matter. AmSouth Bank was in a position to know of Debtor's distress and probable bankruptcy. Under the financing agreement, AmSouth Bank was entitled to receive frequent periodic sales and financial reports from Debtor. AmSouth Bank stopped making advances to Debtor yet continued to collect Debtor's accounts receivable, thereby reducing AmSouth Bank's potential losses. This Court does not believe the facts justify the use of the Court's equitable powers to relieve AmSouth Bank of the clear statutory liability imposed on an initial transferee under section 550.

This Court holds that Plaintiff can recover the avoided transfers from AmSouth or Mr. Wilson, Mr. Godwin, and Mr. Dempsey as provided by section 550.[29]

■ The Court notes that the February 13, 1986 transfer occurred postpetition. Section 547 of the Bankruptcy Code applies only to prepetition transfers.[30] This provision cannot be used to avoid an unauthorized transfer that occurs after the bankruptcy petition is filed. The petition was filed on January 31, 1986. Plaintiff cannot recover the February 13, 1986 transfer nor the Date Unknown transfer.

---

**29.** Section 550(a)(1) states that the trustee may recover from the initial transferee or the entity for whose benefit the transfer was made. Section 102(5) of the Bankruptcy Code specifies that the term "or" is not exclusive. *See* 11 U.S.C.A. § 102(5) (West 1979). Thus, Plaintiff may recover from any combination of the entities, subject to the limitation of a single satisfaction set forth in section 550(c).

**30.** Section 547 applies to transfers which occur before the date of filing. *See* 11 U.S.C.A. § 547(b)(4) (West 1979 & Supp.1989).

Individual Defendants argue that there can be no preference to them if the Court finds there was no preference as to AmSouth Bank. Individual Defendants rely on *Kapela v. Newman* [31] in support of their position. In *Kapela,* the court held that a guarantor does not receive a preference when a debtor uses a corporate asset to reduce the size of a creditor's loan, provided the asset is one in which the creditor held a perfected security interest and is not available to general creditors.[32]

Factual and policy distinctions make this adversary proceeding distinguishable from *Kapla.* Debtor is not the primary obligor on the promissory note, but is secondarily liable solely because of its guarantee of the Bond. Individual Defendants are the primary obligors on the promissory note. Individual Defendants remain liable to Am-South Bank on the promissory note, and it is their primary obligation which was reduced when AmSouth Bank applied the proceeds of the accounts receivable to their obligation. If the proceeds of the accounts receivable totaling $121,581.11 had not been applied to their obligation, it would have been in Debtor's bankruptcy estate available to all unsecured creditors.

Individual Defendants also claim as a defense a right of setoff against Debtor. Individual Defendants assert that they have claims against Debtor which they are entitled to offset against any recovery that Plaintiff might receive on his preference theory. In *Shaw v. Walter E. Heller & Co.,*[33] the former Fifth Circuit Court of Appeals stated: "[A] creditor may not defend against the receipt of otherwise voidable preferences by asserting the right of set-off under Section 68, but to the contrary, must prove himself to be free of such." 385 F.2d at 357 (citations omitted). The requirement of former section 68(b)(1)

of the Chandler Act that a claim be allowable to be set off has been retained in section 553(a)(1). 4 *Collier on Bankruptcy* ¶ 553.01[4] (15th ed. 1989). Section 502(d) of the Bankruptcy Code [34] provides, in relevant part, that the court shall disallow any claim of any entity that is the transferee of a transfer avoidable under section 547 unless such transferee has paid the amount, or turned over any such property, for which such transferee is liable under section 550.[35]

Simply stated, setoff is not a proper defense to a preference action because the theory behind a preference action is that preferential payments are brought back into the bankruptcy estate for equitable distribution in accordance with the priorities of the Bankruptcy Code. To apply setoff in a preference action would defeat the very nature of a preference action.

Finally, the Court addresses AmSouth Bank's allegation that Plaintiff's amended complaint does not relate back pursuant to Rule 15(c) of the Federal Rules of Civil Procedure.[36] Rule 15(c) says, in part:

**(c) Relation Back of Amendments.** Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading.

This Court believes that Plaintiff's claims in the amended complaint arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading.

Plaintiff requests that the costs of this adversary proceeding be taxed against the appropriate party. Because Plaintiff has shown no basis for such an award, the request must be denied.

**31.** 649 F.2d 887 (1st Cir.1981).

**32.** *Id.* at 894.

**33.** 385 F.2d 353, 357 (5th Cir.1967), *cert. denied,* 390 U.S. 1003, 88 S.Ct. 1248, 20 L.Ed.2d 104 (1968). Although this United States Bankruptcy Court sits in the Eleventh Circuit, it is bound by all decisions of the former Fifth Circuit handed

down prior to the close of its business on September 30, 1981. *Bonner v. City of Prichard,* 661 F.2d 1206, 1209–11 (11th Cir.1981).

**34.** 11 U.S.C.A. § 502(d) (West 1979).

**35.** *See Id.*

**36.** Fed.R.Civ.P. 15(c).

Plaintiff is entitled to recover the sum of $121,581.11 from Defendants AmSouth Bank, Jerry F. Wilson, William L. Godwin, and Charles A. Dempsey jointly and severally.