In re **OCTAGON ROOFING** d/b/a **Western Modified Roofing, Debtor.**

Donald **JOHNSON**, Trustee for the Estate of Octagon Roofing d/b/a Western Modified Roofing, **Plaintiff,**

v.

**NBD PARK RIDGE BANK, Defendant.**

Bankruptcy No. 90 B 08656.
Adv. No. 90 A 0873.

United States Bankruptcy Court, N.D. Illinois, E.D.

Feb. 22, 1991.

Donald E. Johnson, Hollis and Johnson, Chicago, Ill., for plaintiff.

Bruce Dopke, Schwartz, Cooper, Kolb & Gaynor, Chicago, Ill., for NBD Park Ridge Bank.

## MEMORANDUM OPINION ON DEFENDANT'S MOTION TO DISMISS

JACK B. SCHMETTERER, Bankruptcy Judge.

Donald E. Johnson ("Trustee"), Chapter 7 trustee in bankruptcy for the estate of Octagon Roofing ("Debtor"), filed this Adversary Complaint seeking in three alternate Counts to avoid a second mortgage lien and guaranty granted by Debtor to the Defendant NBD Park Ridge Bank ("Bank"). The Adversary Complaint also sought an order allowing sale of Debtor's real property pursuant to Sections 363(f)(3) and 363(f)(4) of the U.S. Bankruptcy Code ("Code"), Title 11 U.S.C. In the related bankruptcy proceeding, the Trustee also moved the Court to approve sale of the property on the same grounds. Following hearing held November 19, 1990, this Court allowed a sale to proceed under Section 363(f)(4). The Bank had earlier filed the instant motion to dismiss all four counts of the Adversary Complaint (Motion"). The Court announced from the bench at the November 19, 1990 hearing that the Motion would be denied for reasons to be explained by later opinion. For reasons stated below the Bank's Motion to Dismiss Count II is granted with leave to Plaintiff to file an Amended Count II. However, the Motion to Dismiss Counts I, III and IV is denied.

### FACTS PLEADED

The following facts appear from the Complaint or otherwise in the record (but do not rely on evidence taken at the November hearing):

Hexagon Management Company ("Hexagon"), a Delaware corporation, was the sole general partner of the Debtor, owning 62.5% of partnership interests in Debtor. Eugene Scott, Mike Alcock, Ned Kimbral, Bud Jansen, and Rick Rosenow each owned 12.5% of the stock of Hexagon. Eugene Scott was President of Hexagon.

American Roofing Systems ("ARS") was an Illinois limited partnership whose general partner was ARC Management. Ned Kimbral owned 100% of the stock of ARC Management, while Eugene Scott, Mike Alcock, Bud Jansen, and Rick Rosenow each owned 16% of ARS, either directly or through wholly owned Subchapter "S" corporations.

Debtor owns real estate located at 150 Lyon Drive in Fernley, Nevada, consisting

of a building and ten acres of land (the "Realty"). As of August 1, 1989, the Realty was subject only to a recorded first mortgage interest in the approximate amount of $525,000 in favor of WMR Partners. However, by the end of August, 1989, ARS owed NBD Park Ridge Bank ("Bank") an amount exceeding $4,000,000. The Bank is a banking corporation organized and doing business in the State of Illinois. Debtor also owed ARS approximately $78,206.74.

In August, 1989, the Bank suggested that Debtor give a Second Mortgage on its real estate to secure a new guaranty of loans to ARS from the Bank. Consequently, Eugene Scott, as President of Hexagon and on its behalf as general partner of Debtor, executed a second mortgage on the Realty in favor of the Bank ("Second Mortgage"). Counsel for the Bank prepared the mortgage document.

The first page of the mortgage instrument is entitled "Junior Mortgage To Secure Guaranty," and provides that the Second Mortgage was executed to secure Debtor's guaranty of ARS' debt of $4,079,-99.96 to the Bank. The figure of $4,079,-99.96 is handwritten on the document. The guaranty was in the amount of $1,000,000.

The second page of the mortgage instrument states that the purpose of the mortgage was

> to secure the payment of all obligations under the Guaranty, and all indebtedness of Mortgage [Debtor] to the Mortgagee [Bank], whether now existing or hereafter incurred ... which indebtedness at any one time secured hereby in no event shall exceed One Million Dollars....

It is alleged that the Bank would have shut down the operations of ARS had Debtor not executed the Second Mortgage and guaranty.

In August, 1989, Eugene Scott as President of Hexagon, the general partner of Debtor, executed the aforesaid guaranty of ARS' debt to the Bank. The Second Mort-

gage was recorded on or about August 31, 1989. As of that date, Debtor owed the Bank at least $2,000,000 for loans made by the Bank to Debtor in 1988. In addition, Debtor's liabilities exceeded the value of its assets. Debtor did not receive any new funds from the Bank as a result of the Second Mortgage, and was unable to obtain alternative financing of its obligations to the Bank in 1989. Debtor then owed an unsecured debt to ARS in the amount of $83,006.74.

On or about July 9, 1990, Donald Johnson ("Trustee") was appointed Chapter 7 Trustee of Debtor. On November 1, 1990, Trustee filed this Adversary Complaint against the Bank. Count I of the Complaint seeks to avoid the guaranty and Second Mortgage as constituting a fraudulent conveyance pursuant to Section 548(a)(2) of the Code. Count II, as an alternative count, seeks to avoid the same transfer as a preference under Section 547(b) of the Code. Count III, also pleaded in the alternative to Count I, alleges that the guaranty and Second Mortgage constitute a voidable preference within the meaning of *Levit v. Ingersoll Rand Financial Corp.*, 874 F.2d 1186 (7th Cir.1989) (*"Deprizio"*). Finally, Count IV seeks a sale of the Realty pursuant to Section 363(f)(3) and Section 363(f)(4) of the Code.

On or about November 7, 1990, the Bank filed the present Motion to Dismiss. Because the Trustee had a potential bidder on the Realty (Polyglass, S.p.A.) the Court took evidence and considered the issues under Count IV of the Complaint on November 19, 1990. It was found that if Trustee prevails in his Adversary case, the bid of Polyglass, in the amount of $1,920,-000, would exceed both the Bank's secured claim and the first mortgage lien of WMR Partners. The bid would thus exceed the aggregate value of liens against the Realty, and the Trustee could therefore sell said assets to Polyglass free and clear of liens and over the Bank's objections pursuant to Section 363(f)(3).[1] However, the Court

---

1. Section 363(f)(3) provides that the trustee may sell property free and clear of any interest in such property of an entity other than the estate,

if "such interest is a lien and the price at which such property is to be sold is greater than the

found that because the Trustee had not yet proven his case, the sale could not be authorized under Section 363(f)(3).

However, it was also found that evidence demonstrated a bona fide dispute between the Trustee and the Bank as to Counts I and III of the Adversary Complaint. Thus, the Court allowed the sale to Polyglass or any higher bidder to proceed over the Bank's objection pursuant to Section 363(f)(4).[2] Findings of Fact and Conclusions of Law were then entered in support of that ruling. *In re Octagon Roofing,* 123 B.R. 583 (Bankr.N.D.Ill.1991).

Accordingly, on November 29, 1990, the sale of the Realty took place. Pursuant to 11 U.S.C. § 363(k), the Bank was allowed to make a credit bid of its claim on the Realty, and consequently made the high bid of $2,220,000. Pursuant to the order of this Court, the Bank posted an irrevocable letter of credit drawn on another bank in order to protect the Trustee. The letter of credit guaranteed payment of up to $416,008.90 to the Trustee in the event Trustee ultimately prevails in his Adversary case and the credit bid proves to be more than the Bank's secured debt.

### *Jurisdiction*

United States District Courts have subject matter jurisdiction over cases arising under, arising in, or related to proceedings under Title 11. 28 U.S.C. § 1334(a), (b). Each District Court is authorized to refer such proceedings to bankruptcy judges for the district. 28 U.S.C. § 157(a). The United States District Court for the Northern District of Illinois has made such referral pursuant to Local District Rule 2.33.

In a core proceeding that arises in or under Title 11, a bankruptcy judge has jurisdiction to hear and determine the proceeding and issue final orders and judgments. 28 U.S.C. § 157(a). A proceeding to determine, avoid, or recover preferences is a core proceeding. 28 U.S.C.

§ 157(b)(2)(F). A proceeding to determine, avoid, or recover fraudulent conveyances is a core proceeding. 28 U.S.C. § 157(b)(2)(H). Accordingly, the Complaint filed here rests on this Court's core jurisdiction.

### *Standards on Motion to Dismiss*

The Bank's Motion to Dismiss is brought pursuant to Bankruptcy Rule 7012 which makes Rule 12(b)(6) of Fed.R.Civ.P. applicable to adversary proceedings. For the Bank to prevail on its Motion to Dismiss, it must clearly appear from the pleadings that the Trustee can prove no set of facts in support of his claims which would entitle him to relief. *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Swanson v. Wabash, Inc.,* 577 F.Supp. 1308 (N.D.Ill.1983). The Court must consider both pleaded facts and reasonable inferences drawn from pleaded facts, in a light most favorable to Plaintiff when reviewing the Bank's motion to dismiss. *Mescall v. Burrus,* 603 F.2d 1266, 1269 (7th Cir.1979); *City of Milwaukee v. Saxbe,* 546 F.2d 693, 704 (7th Cir.1976); *Corcoran v. Chicago Park District,* 875 F.2d 609 (7th Cir.1989); *Westland v. Sero of New Haven, Inc.,* 601 F.Supp. 163, 166 (N.D.Ill.1985).

### *Count I—Fraudulent Conveyance*

Count I of the Adversary Complaint seeks to avoid the guaranty and Second Mortgage as constituting a fraudulent conveyance under 11 U.S.C. § 548(a)(2). Trustee pleads Count I in the alternative to preference Counts II and III in the event the Court ultimately finds that the purpose of the Second Mortgage was not to secure Debtor's antecedent obligations, but rather to secure Debtor's guaranty of ARS' debt to the Bank.

Unlike Section 548(a)(1) which requires a plaintiff to allege actual fraud, Section 548(a)(2) requires a plaintiff to allege only constructive fraud. *Wieboldt Stores, Inc. v. Schottenstein,* 94 B.R. 488, 505 (N.D.Ill.

---

aggregate value of all liens on the property." 11 U.S.C. § 363(f)(3).

**2.** Section 363(f)(4) provides that the trustee may sell property free and clear of any interest in such property of an entity other than the estate if "such interest is in bona fide dispute." 11 U.S.C. § 363(f)(4).

1988). A plaintiff states a claim under Section 548(a)(2) by alleging that the debtor: (1) transferred property within one year of filing a petition in bankruptcy; (2) received less than reasonably equivalent value for the property transferred; and (3) either (a) was insolvent or became insolvent as a result of the transfer, (b) retained unreasonably small capital after the transfer, or (c) made the transfer with the intent to incur debts beyond its ability to pay. 11 U.S.C. § 548(a)(2).

The Second Mortgage, which was recorded on August 31, 1989, was given within one year of the bankruptcy filing, which took place on or about June 21, 1990. It is further asserted that Debtor was insolvent at the time the Second Mortgage was given because Debtor's liabilities exceeded the value of its assets. In addition, Trustee alleges that Debtor was unable to find alternative financing, thereby suggesting that Debtor could not satisfy its current obligations. Thus, the only remaining question under Section 548(a)(2) is whether Trustee has sufficiently pled that Debtor did not receive reasonably equivalent value for the guaranty and Second Mortgage. Reasonable equivalence depends on the facts of each case. *Bundles v. Baker (In re Baker)*, 856 F.2d 815, 824 (7th Cir.1988).

Trustee argues that the primary purpose of the Second Mortgage was to support the guaranty by Debtor of ARS' obligations of over $4,000,000 to the Bank, as evidenced by the first page of the mortgage instrument which is captioned "Junior Mortgage To Secure Guaranty." Said first page specifically identifies ARS' loans from the Bank in the amount of $4,079,999.96 as the basis for Debtor's one million dollar guaranty in favor of the Bank.

If the Court should decide that the purpose of the Second Mortgage was to secure ARS's debt to the Bank, then the Second Mortgage may indeed constitute a transfer for less than reasonably equivalent value. It is well-established that

transfers made to benefit third parties are clearly not made for a 'fair consideration,' and, similarly, that a conveyance by a corporation for the benefit of an affiliate should not be regarded as given for fair consideration as to the creditors of the conveying corporation. *In re Osage Crude Oil Purchasing, Inc.*, 103 B.R. 256, 263 (Bankr.N.D.Okla.1989), citing 4 *Collier On Bankruptcy*, ¶ 548.09 (15th ed. 1990).

Furthermore, Trustee asserts that Debtor did not receive any new loans from the Bank in exchange for Debtor's grant of security for ARS' loans.

However, the Bank argues that the primary purpose of the Second Mortgage was to secure antecedent debt in the amount of approximately $2,000,000 owed by Debtor to the Bank, as evidenced by language on the second page of the mortgage instrument. Such language provides that Debtor granted the mortgage "... to secure the payment of all obligations under the Guaranty, and all indebtedness of Mortgagor [Debtor] to the Mortgagee [Bank], whether now existing or hereafter incurred...." The Bank therefore contends that Trustee fails to state a cause of action under Section 548(a)(2) because the Second Mortgage was given for antecedent debt, which constitutes reasonably equivalent value pursuant to Section 548(d)(2)(A).[3]

The Bank's argument, however, depends on whether or not the "boilerplate" provision on page two of the mortgage instrument should be enforced. All-encompassing provisions similar to that contained in the Second Mortgage have been labeled "dragnet" clauses because "by their broad terms the unsuspecting debtor is enwrapped in the folds of secured indebtedness." *Natl. Acceptance Co. of America v. Exchange National Bank of Chicago*, 101 Ill.App.2d 396, 243 N.E.2d 264, 268 (1st Dist.1968). Such clauses are therefore to be carefully scrutinized and strictly construed. *Id.*

---

**3.** Section 548(d)(2)(A) provides:

"value" means property, or satisfaction or securing of a present or *antecedent* debt of the debtor.... 11 U.S.C. § 548(d)(2)(A) (emphasis supplied).

Dragnet clauses are said not to be favored under Illinois law. *Stannish v. Community Bank of Homewood–Flossmoor*, 24 B.R. 761, 762 (Bankr.N.D.Ill.1982), citing *Natl. Acceptance; Farmers and Mechanics Bank v. Davies*, 97 Ill.App.3d 195, 52 Ill.Dec. 655, 422 N.E.2d 864 (3rd Dist. 1981). Dragnet clauses will only be upheld where no ambiguity exists and the clause can be interpreted according to the language used. *Id.* at 763. In other words, antecedent debts may be secured by a mortgage containing a dragnet clause "only if the antecedent debts are clearly identified in the mortgage." *First Natl. Bank & Trust Co. v. Lygrisse*, 231 Kan. 595, 647 P.2d 1268, 1271 (1982).

In *Natl. Acceptance*, the court upheld the validity of a dragnet clause contained in a trust deed because it found the clause to be unambiguous. *Id.* The clause specifically stated that the deed was delivered to secure past, present, and future debt "in addition to the note described above." *Natl. Acceptance*, 243 N.E.2d at 268. In contrast, the dragnet clause in the Second Mortgage in issue here does not identify which specific notes or loans, of either Debtor or ARS, that the mortgage is intended to secure. It merely refers to "all indebtedness" between Debtor and the Bank. Because the Second Mortgage does not identify the antecedent debt, the clause providing for its security might fall under Illinois law.

Furthermore, ambiguity regarding the actual purpose of the Second Mortgage is also created by language on the first page of the instrument, which states that the purpose of the Second Mortgage was to secure Debtor's guaranty of ARS' debt to the Bank. Under the rule of strict construction, any ambiguity between a dragnet clause and another provision covering the same subject matter "would have to be construed against application of the dragnet clause, absent other evidence of the parties' intent." *Farmers and Mechanics Bank v. Davies*, 97 Ill.App.3d 195, 52 Ill.Dec. 655, 659, 422 N.E.2d 864, 868 (3rd Dist.1981). Thus, where ambiguities exist between two provisions in a contract,

the more specific provision relating to the same subject matter controls over the more general provision. *Farmers*, 52 Ill.Dec. at 660, 422 N.E.2d at 869; *Whalen v. K–Mart Corp.*, 166 Ill.App.3d 339, 116 Ill.Dec. 776, 780, 519 N.E.2d 991, 995 (1st Dist.1988).

Similarly, where ambiguities exist between a typed portion of a contract and a printed form provision, then the typed portion is to be given effect over the printed form in determining the intention of the parties. *Farmers*, 52 Ill.Dec. at 660, 422 N.E.2d at 869 (in which the Illinois court noted that the dragnet clause was preprinted whereas the provision specifically securing 13 promissory notes was typewritten). In addition, ambiguities in a mortgage should be construed against its maker, since the drafter should be held accountable for the ambiguities of its own expression. *Farmers*, 52 Ill.Dec. at 660, 422 N.E.2d at 869; *In re Hunter*, 68 B.R. 366, 369 (Bankr.C.D.Ill.1986), citing *Pescaglia v. Gianessi*, 9 Ill.App.3d 582, 295 N.E.2d 148 (3rd Dist.1973).

In applying Illinois law to the Second Mortgage, it would appear that the ambiguity between provision on the first and second pages might be resolved in favor of the first page provision, which states that the purpose of the Second Mortgage was to secure ARS' debt to the Bank. The first page provision is specific as to purpose, and the amount and type of debt. The amount of ARS' debt on the first page is handwritten in contrast to the type-written boilerplate language of the dragnet clause. Finally, Trustee asserts, and the Bank does not dispute, that the mortgage instrument was drafted by counsel for the Bank.

The court in *Farmers* found that the lender at issue should "at least have the opportunity to prove that the parties involved clearly intended the provisions to be read as consistent with each other." *Farmers*, 52 Ill.Dec. at 659, 422 N.E.2d at 868; *see also Hunter*, 68 B.R. at 369 (in which the court observed that where the terms of an agreement are ambiguous, the intention of the parties should be ascertained by an examination of "all the facts and circumstances manifested by the evi-

dence...."). The *Farmers* court therefore remanded for further proceedings. Thus, although this Court does not now find that the purpose of the Second Mortgage was to secure ARS' debt rather than Debtor's antecedent debt to the Bank, the Court does find that the Trustee has sufficiently alleged that the guaranty and Second Mortgage were given to secure ARS' debt, and thus were not given for reasonably equivalent value. Because the Trustee has sufficiently stated a cause of action under Section 548(a)(2), the Bank's Motion to Dismiss Count I is denied.

### Count II—Preference

■ Count II of the Adversary Complaint seeks to avoid the Second Mortgage as constituting a preference under 11 U.S.C. § 547(b). Section 547(b) provides that a trustee may set aside a transfer if five elements are met. That is, the trustee must show that the transfer was

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—

(A) on or within 90 days before the date of the filing of the petition; or

(B) between ninety days and one year before the date of filing of the petition if such creditor at the time of transfer was an insider; and

(5) that enables such creditor to receive more than such creditor would receive if—

(A) the case were a case under chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title. 11 U.S.C. § 547(b).

First, the Second Mortgage was recorded on August 31, 1989. As of that date, the Bank was a creditor of Debtor on the basis of a 1988 loan in an amount exceeding $2,000,000. Second, the Bank itself asserts that the purpose of the Second Mortgage was to secure the antecedent debt of Debtor to the Bank. As discussed previously, certain language in the mortgage instrument can be interpreted to support such assertion, namely "[Second Mortgage was given] ... to secure the payment of all obligations under the Guaranty, and all indebtedness of mortgagor [Debtor] to the Mortgagee [Bank], whether now existing or hereafter incurred...." Third, Trustee asserts that as of August 31, 1989, Debtor was insolvent because Debtor's liabilities exceeded the value of its assets. Finally, as an undersecured creditor, the Bank was in a position to receive substantially more through its asserted Second Mortgage security interest than it would have received had the Second Mortgage not been granted.

Thus, the only remaining question concerns the fifth requirement under Section 547(b). Because the Second Mortgage was made between ninety days and one year of the filing of the bankruptcy petition, Debtor must allege facts demonstrating that the Bank was an "insider" in order to state a cause of action under Section 547(b).

■ The term "insider" is defined in 11 U.S.C. § 101(30) as including a "person in control of the debtor." 11 U.S.C. § 101(30).[4] Such term has been held to refer to someone who has a sufficiently close relationship with a debtor whereby his conduct is subject to closer scrutiny than those who deal at arms length with the debtor. *In re Jefferson*, 25 B.R. 963, 970 (Bankr.D.N.J.1982). In other words, an "insider" is one who does not deal at arms length with the debtor. *In re Newcomb*, 744 F.2d 621, 625 n. 4 (8th Cir.1984); *In re Badger Freightways, Inc.*, 106 B.R. 971, 980 (Bankr.N.D.Ill.1989). The determination of insider status is a question of fact which must be decided on a case-by-case basis. *In re Cavalier Homes of Geor-*

---

4. Section 101(35) of the Code provides that the definition of "person" includes a corporation.

The Bank is of course a corporation.

gia, Inc., 102 B.R. 878, 883 (Bankr.M.D.Ga. 1989).

Trustee argues that because the Bank had financial control over Debtor, the Bank was an insider within the meaning of that term as used in Section 547(b). Specifically, Trustee alleges that the Bank could have, and would have, effectively shut down Debtor's operations if Debtor had not granted the Second Mortgage and guaranty. Trustee also alleges that Debtor could not find any alternative financing of its obligations to the Bank.

However, it is well established that the exercise of financial control by a creditor over a debtor which is incident to the creditor-debtor relationship, does not make the creditor an insider. Cavalier, 102 B.R. 878, 883. See also In re Practical Investment Corp., 95 B.R. 935, 941 (Bankr.E.D. Va.1989) ("mere financial power over debtor does not necessarily impute insider status to a lender"). Trustee alleges facts which merely demonstrate that the Bank could compel payment of its debt. Such facts are insufficient to establish the Bank as an insider for purposes of preference avoidance. See Newcomb, 744 F.2d at 625 n. 4; Jefferson, 25 B.R. at 970.

In order to demonstrate that the Bank is an insider, Trustee must instead allege facts showing that the Bank was in a position to make the decision authorizing the Second Mortgage. See Badger, 106 B.R. at 982. "The fact that a debtor has a weak bargaining position and few choices does not indicate that the other party is an insider as long as the bank cannot unilaterally implement the transfer in issue." Id. In order to show that the Bank is in such a position, Trustee must show that the Bank possessed operating control over Debtor. Id. In defining whether a lender is an insider, a lender is in effect held to the same standard of conduct as an individual, or, "the person must exercise sufficient authority over the corporate debtor so as to unqualifiably dictate corporate policy and the disposition of corporate assets." Badger, 106 B.R. at 982, quoting In re Babcock Diary Co. of Ohio, 70 B.R. 657, 661 (Bankr.N.D.Ohio 1986).

Thus, in In re Technology For Energy Corp., 56 B.R. 307, 316 (Bankr.E.D.Tenn. 1985), the court found that a debtor could not establish it was controlled by its lender since the lender did not control the debtor's contract or personnel decisions; was not involved in production schedules or purchase order decisions; and, did not control the debtor's accounts payable. Furthermore, although the lender had attained voting control, it never exercised that control, and the debtor had had the benefit of legal counsel throughout its relationship with the lender. Id. See also Cavalier, 102 B.R. at 883 (in which the court found that the lender had not exercised any "managerial control over debtor or required that debtor obtain its advice or consent before exercising managerial decisions," and that debtor had not been required to obtain prior approval from the lender for "decisions made in the ordinary course of business").

Trustee alleges that Debtor's inability to find an alternative source of financing in effect placed the Bank in the position of an insider. However, even if the Bank did have the power to shut down Debtor's operations, such control was financial influence as opposed to operating or managerial control, and as such would not cause the Bank to be an "insider" for purposes of Section 547(b).

Trustee also asserts that since Debtor did not receive any specific benefit as a result of the Second Mortgage, the mortgage and guaranty agreement was not the type of agreement that a company would enter into "unless there was undue control of the Debtor by the Bank." Such allegation is conclusory and does not plead any factual basis. In addition, if the purpose of the Second Mortgage was to secure antecedent debt owed by Debtor to the Bank, the Debtor may well have realized a benefit. If the purpose of the Second Mortgage was to secure Debtor's guaranty of ARS' debt to the Bank, it is still possible that Debtor received some kind of benefit given the close relationship between Debtor and ARS. In either event, Trustee has failed to allege facts demonstrating the requisite

level of operating control. *See Badger*, 106 B.R. at 982.

Thus, Trustee's allegations of financial control by the Bank over Debtor are insufficient to show that the Bank was an insider. The Bank's Motion to Dismiss Count II of the Adversary Complaint is therefore granted, but the Trustee–Plaintiff will be given an opportunity to amend if he can.

### Count III—"Deprizio" Count

■ In Count III of the Adversary Complaint, the Trustee seeks to avoid the guaranty and Second Mortgage as constituting a preference under Section 547(b), and bases its pleading on the reasoning of the Seventh Circuit in *Levit v. Ingersoll Rand Financial Corp.*, 874 F.2d 1186 (7th Cir.1989) (commonly known as the *"Deprizio"* case). The Trustee argues that even if the Court finds that the Bank was not an insider of Debtor, the "insider" requirement is still met in light of the holding in *Deprizio*.

In *Deprizio*, the one year insider preference period in Section 547(b)(4)(B) of the Code was applied to an initial transferee under Section 550(a)(1) [5], even though the initial transferee was not an insider. *Id.* The *Deprizio* court reasoned that if a transfer benefitted an inside creditor of the debtor, then the initial transferee could be liable for a preferential transfer up to one year before the filing of the bankruptcy case. *Id.* at 1201 ("We hold ... that the preference recovery period for outside creditors is one year when the payment produces a benefit for an inside creditor, including a guarantor").

In *Deprizio*, the inside creditor, an officer of the debtor, was a creditor by virtue of his guaranty of the debtor's outstanding loans. *Id.* The initial transferee was one of the lenders. *Id.* Although ARS is not a guarantor here, it is undisputed that ARS is an inside creditor of Debtor. The ownership interests of Debtor and ARS are

shared by several of the same individuals. Furthermore, at least as of the time the Second Mortgage was given, Debtor owed ARS an unsecured debt in the amount of $83,006.74.

In the earlier discussion of Count II, it was found that the Trustee has pleaded sufficient facts with regard to four of the five requirements under Section 547(b). For purposes of Count III, however, it could be argued that Trustee has failed to plead facts sufficient to satisfy Section 547(b)(2), which requires that the transfer in question be made "for or on account of an antecedent debt owed by the debtor." Specifically, in *In re Granada, Inc.*, 110 B.R. 548 (Bankr.D.Utah 1990), the debtor made two loan payments to a non-insider bank for application to a loan that the bank had made to the president of the debtor. *Granada*, 110 B.R. at 551. The *Granada* court found that the trustee had failed to plead facts sufficient to satisfy Section 547(b)(2) because the trustee had not alleged that the debtor was liable on the loan made by the bank to the inside creditor. *Id.* Thus, the trustee had failed to show that the transfers were made on account of antecedent debt owed by the debtor. *See* Section 547(b)(2).

As in *Granada*, because the Second Mortgage could have been made for the purpose of securing debt of ARS, that transfer of interest may not have been made "for or on account of an antecedent debt owed by the debtor." Unlike *Granada*, however, the second page of the mortgage instrument provides that the Second Mortgage was being given not only to secure "the payment of all obligations under the Guaranty [of ARS debt]," but also to secure "all indebtedness of Mortgagor [Debtor] to the Mortgagee [Bank], whether now existing or hereafter incurred...." Indeed, the Bank itself asserts that the purpose of the Second Mortgage was to secure the antecedent debt of Debtor to the

---

**5.** Section 550, which specifies who is liable for a transfer avoided under Section 547(b), provides: (a) ... to the extent a transfer is avoided under section ... 547, ... the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from— (1) the initial transferee of such transfer or the entity for whose benefit such transfer was made.... 11 U.S.C. § 550(a)(1).

Bank. Thus, Trustee has pleaded facts sufficient to satisfy Section 547(b)(2).

 The only issue remaining as to sufficiency of Count III is whether the Trustee can avail himself of the one year insider provision under *Deprizio.*

The Trustee alleges that the Second Mortgage benefitted ARS because it guaranteed and secured ARS' debt to the Bank and that consequently, the Bank did not foreclose on its liens against ARS. He asserts that foreclosure would have effectively shut down ARS' operations. Thus, the Trustee has sufficiently alleged the benefit which ARS received as an inside creditor as a result of the Second Mortgage.

The Bank argues that the Trustee still fails to plead a cause of action under Section 547(b) because *Deprizio* is inapplicable to the facts alleged here. The Bank contends that the benefit recognized by the *Deprizio* court was a pecuniary benefit, or, a reduction of the inside creditor's liability to the lender. In contrast, the benefit to ARS is said to be non-pecuniary, one that cannot be quantified.

However, this Court is not necessarily limited by the particular facts in *Deprizio.* There is nothing in *Deprizio,* or in any cases which have followed the reasoning of the *Deprizio* court [6], which suggests that benefit to the inside creditor must be monetary in nature and cannot include forbearance such as that exercised by the Bank in favor of ARS.

Accordingly, the Trustee has alleged facts demonstrating a benefit to ARS, and consequently has stated a cause of action pursuant to Section 547(b) as interpreted in *Deprizio.* The Bank's Motion to Dismiss Count III of the Adversary Complaint is therefore denied.

### Count IV—Sale

Count IV of the Adversary Complaint seeks to sell the Realty pursuant to either Section 363(f)(3) or Section 363(f)(4). In its

---

**6.** *See e.g., In re C–L Cartage Co., Inc.,* 899 F.2d 1490 (6th Cir.1990); *Granada,* 110 B.R. 548 (Bankr.D.Utah 1990); *In re Kroh Bros. Dev. Co.,*

---

Findings of Fact and Conclusions of Law entered January 3, 1991, the Court did not allow the sale under Section 363(f)(3) since the Trustee had not yet proven his case in the Adversary Proceeding. However, the Court did allow the sale after finding from evidence presented that the Trustee poses a bona fide dispute under Section 363(f)(4) in Counts I and III. Accordingly, the sale took place on November 29, 1990.

Since a sale has already taken place, the remainder of Count IV may be moot, but the Defendant's motion does not reach that question and the Court does not reach it now. Therefore the instant motion to dismiss will be denied.

### CONCLUSION

Accordingly, by separate order the Bank's Motion to Dismiss Counts I, III, and IV of the Adversary Complaint is denied. The Motion to Dismiss Count II is granted with leave to Plaintiff to file an amended complaint within time set for such filing.

---

115 B.R. 1011 (Bankr.Mo.1990); *In re Robinson Bros. Drilling, Inc.,* 892 F.2d 850 (10th Cir.1989).