In re WHITACRE SUNBELT,
INC., Debtor.

John W. RAGSDALE, Jr., as Trustee for
the Estate of Whitacre Sunbelt, Inc.,
and Morton P. Levine, as Trustee for the
Estate of Whitacre International, Inc.,
Plaintiffs,

v.

BANK SOUTH, N.A., David A. Whitacre,
and Mark C. Pope, III, Defendants.

Bankruptcy No. 94–61954–JB.
Adversary No. 95–6632.

United States Bankruptcy Court,
N.D. Georgia,
Atlanta Division.

Feb. 6, 1997.

See also: 200 B.R. 422.

William Russell Patterson, Jr., Ragsdale, Beals, Hooper & Seigler, Atlanta, GA, for Plaintiff John W. Ragsdale, Jr., Trustee for Estate of Whitacre Sunbelt, Inc.

Stephen H. Block, Levine & Block, Atlanta, GA, for Plaintiff Morton P. Levine, Trustee for Estate of Whitacre International, Inc.

Ezra Cohen, Troutman, Sanders, Atlanta, GA, for Defendant Bank South, N.A.

John C. Pennington, Wilson, Strickland & Benson, Atlanta, GA, for Defendant David A. Whitacre.

J. Michael Lamberth, Lamberth, Bonapfel, Cifelli, Willson & Stokes, P.A., Atlanta, GA, for Defendant Mark C. Pope, III.

## *ORDER*

JOYCE BIHARY, Bankruptcy Judge.

This adversary proceeding was brought by two plaintiffs, both of whom are trustees in the pending Chapter 7 cases of two affiliated debtor corporations. Plaintiff John W. Ragsdale, Jr., is the trustee of Whitacre Sunbelt, Inc. ("Whitacre Sunbelt"), and Plaintiff Morton P. Levine is the trustee of Whitacre International, Inc. ("Whitacre International"). Both plaintiffs seek to set aside a transfer of $335,700.00 and to recover that amount from Defendants Bank South, N.A. ("Bank South") and Mark C. Pope, III ("Mr. Pope"). The funds transferred flowed from Whitacre Sunbelt to Whitacre International

and then to Defendant Bank South. The funds paid off a loan from Bank South to Defendant David A. Whitacre ("Mr. Whitacre"), which had been guaranteed by Defendant Pope. Both corporations filed bankruptcy within one year of the payment to Bank South. Mr. Ragsdale, as trustee of Whitacre Sunbelt, has alleged both preference and fraudulent conveyance claims, while Mr. Levine, as trustee of Whitacre International, seeks recovery only on a preference theory. This is a core proceeding under 28 U.S.C. § 157(b)(2)(F) and (H).

This avoidance action raises issues regarding the expanded reachback of one year for preference claims under 11 U.S.C. § 547(b)(4)(B), whether a maker of a note has a contingent claim against a co-indemnitor of a guarantor, and the applicability of the earmarking doctrine to a preference claim.

The parties have filed a number of motions. Initially, the trustees filed a joint complaint, seeking relief only against Bank South and Mr. Whitacre. Four months later, plaintiffs filed a motion to add Mr. Pope as a defendant, which the Court granted, and the plaintiffs then filed an amended complaint, alleging all claims against all defendants. Plaintiffs Levine and Ragsdale and Defendants Bank South and Pope have all filed motions for summary judgment. In Mr. Levine's motion for summary judgment, he seeks a judgment jointly and severally against Bank South and Mr. Pope on a preference claim. In Mr. Ragsdale's motion for summary judgment, he sought a judgment jointly and severally against Mr. Pope and Mr. Whitacre on a preference claim.[1] However, on September 18, 1996, Mr. Ragsdale filed a pleading requesting permission to file a supplemental motion for summary judgment, in which he sought to add Bank South and Whitacre International to his original request for judgment against Mr. Pope. By the terms of that motion, Mr. Ragsdale sought a judgment against the estate of Whitacre International to the extent that the Court determined that Whitacre International was the initial transferee of a preferential transfer by Whitacre Sunbelt. To complicate matters further, Messrs. Ragsdale and Levine filed a motion to settle and compromise, stating that they have agreed to divide equally any recovery obtained by either estate in this adversary proceeding.

Bank South filed a motion for summary judgment requesting dismissal of Mr. Levine's preference claim based on the earmarking doctrine, dismissal of Mr. Ragsdale's preference claim on the theory that the extended reachback period is not available here since Mr. Whitacre was not a creditor of Whitacre Sunbelt, and dismissal of Mr. Ragsdale's fraudulent transfer claim on the grounds that Bank South was not the initial transferee and that it took the payment in good faith and for value. Mr. Pope filed motions for summary judgment as to all the claims of both trustee plaintiffs. Mr. Pope joins Bank South's arguments, and he further asserts that all claims against him should be dismissed because the extended reachback provision was never intended to apply to noninsiders who were not transferees. Mr. Pope also filed a motion to dismiss all claims against him, asserting that he was improperly joined as a defendant. The Court held a hearing on all these motions on December 5, 1996. Following the hearing, the parties filed additional briefs, and Mr. Ragsdale filed a motion to amend the complaint to add claims to set aside the transfer from Whitacre Sunbelt to Whitacre International.

## I. Facts

Many of the material facts are undisputed for purposes of the pending motions. On March 20, 1992, Mr. Whitacre, individually,

---

1. On July 25, 1995, Defendant David A. Whitacre filed a personal Chapter 7 bankruptcy, Case Number 95–70143. In a Consent Order entered September 28, 1995, the Court lifted the automatic stay to permit this adversary proceeding to be filed against Mr. Whitacre so that the transfer could be avoided. The only recourse available to collect any judgment obtained against Mr. Whitacre would be to file a proof of claim in his personal bankruptcy.

borrowed $330,000.00 from Bank South and signed a promissory note, with the loan to come due on August 5, 1992. At the time Bank South made this loan to Mr. Whitacre, Bank South understood that Mr. Whitacre intended to use the monies for the business of Whitacre International. Mr. Whitacre took the $330,000.00 Bank South check payable to himself, endorsed it to Whitacre International, and delivered it to the chief financial officer of Whitacre International, Robert Humberstone. Mr. Humberstone deposited the funds into the Bank South account of Whitacre International.

On the same day, Defendant Pope signed a guaranty in favor of Bank South, guaranteeing the $330,000.00 loan to Mr. Whitacre. A typewritten special stipulation on the guaranty fixed Mr. Pope's maximum liability at $330,000.00 plus interest, costs, and attorney's fees related to this principal amount. Messrs. Pope and Whitacre, Whitacre International, and Whitacre Sunbelt, also signed an indemnification agreement in which Mr. Whitacre and the two corporations agreed to indemnify Mr. Pope for any payment Mr. Pope might make on his guaranty. Finally, the two corporations each signed security agreements in favor of Mr. Pope, pursuant to which the corporations granted Mr. Pope a security interest in various pieces of equipment to secure payment of their obligations under the indemnification agreement.

The record reflects that Whitacre International received the $330,000.00 from Mr. Whitacre with the understanding that Whitacre International was to repay Bank South this sum together with interest either according to the terms of the note between Mr. Whitacre and Bank South or on such other terms as the parties could agree. This transaction was recorded on the balance sheets of Whitacre International as a loan payable to Bank South in the principal amount of $330,-000.00 until the loan was paid. Bank South renewed the loan to Mr. Whitacre twice, such that the loan finally came due in June of 1993.

On June 25, 1993, Whitacre Sunbelt transferred $335,720.00 by check payable to Whitacre International. The check request stated that the check was needed for a "loan to pay off bank note at Bank South, check to be made out to Whitacre International." The stub on the check from Whitacre Sunbelt to Whitacre International bore the notation "WII0625 loan." On the same day, Whitacre International drew a check payable to Bank South in the amount of $335,720.00, and typewritten on the check stub were the words "Whitacre International Note Payment." Robert Humberstone, CFO of Whitacre International, immediately delivered the check to Bank South, who then issued a receipt in the same amount listing Mr. Whitacre as the customer. Bank South's file concerning the $335,720.00 payment includes a handwritten note from Mr. Whitacre reading as follows: "Please call Mark Pope and tell him the loan was paid. Please let me know when this is completed. Thanks. David Whitacre." Upon Bank South's receipt of these monies, the bank caused its records to reflect the payment of Mr. Pope's guaranty. These June 1993 transactions were reflected in Whitacre International's records as a satisfaction of its liability to Bank South and the creation of an identical liability from Whitacre International to Whitacre Sunbelt.

On February 9, 1994, both Whitacre Sunbelt and Whitacre International filed petitions for bankruptcy relief. Whitacre Sunbelt filed a petition under Chapter 7 of the Bankruptcy Code, and Mr. Ragsdale was appointed as the Chapter 7 trustee. Whitacre International originally filed a case under Chapter 11 of the Bankruptcy Code, but the case was converted to Chapter 7, and Mr. Levine was appointed as the Chapter 7 trustee.

The parties agree that Whitacre Sunbelt and Whitacre International had different ownership and management structures and different business purposes from the time Bank South made its loan to Mr. Whitacre on March 20, 1992, until it was repaid on June 25, 1993. It is undisputed that Whitacre International was insolvent at the time of the June 25, 1993 transfer, and for purposes of these motions, it is also undisputed that

Whitacre Sunbelt was insolvent in June of 1993. Finally, it is undisputed that Mr. Whitacre was an insider of Whitacre Sunbelt as that term is defined in 11 U.S.C. § 101(31), and for purposes of these motions, the parties agree that Mr. Whitacre was an insider of Whitacre International.

## II. Summary Judgment Standard

Fed.R.Civ.P. 56 and Bankruptcy Rule 7056 provide for the granting of summary judgment if there is no genuine issue as to any material fact and if the moving party is entitled to a judgment as a matter of law. The movant has the initial burden of showing that there is no genuine issue of fact. *Celotex Corporation v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *Meir v. United States (In re Healthcare Svcs., Inc.),* 85 B.R. 913, 915 (Bankr.N.D.Ga. 1986). In determining whether there is a genuine issue of material fact, the Court must view the evidence in the light most favorable to the party opposing the motion. *Hershey v. City of Clearwater,* 834 F.2d 937, 941 (11th Cir.1987); *Healthcare Svcs.,* 85 B.R. at 915. In discussing the movant's burden under Rule 56, the Supreme Court held in *Celotex* that the movant must identify those parts of the record that demonstrate the absence of a genuine issue of material fact, but the movant need not support its motion with affidavits or other similar materials negating the opponent's claim. 477 U.S. at 323, 106 S.Ct. at 2553; *see Healthcare Svcs.,* 85 B.R. at 915.

Pursuant to Fed.R.Civ.P. 56(e), once the movant meets his initial burden, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." The Court in *Celotex* said:

> where the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the "pleadings, depositions, answers to interrogatories, and admissions on file." Such a motion, whether or not accompanied by affidavits, will be "made and supported as

provided in this rule," and Rule 56(e) therefore requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial."

477 U.S. at 324, 106 S.Ct. at 2553. Furthermore, in order to defeat a motion for summary judgment, the non-moving party who has the burden of proof at trial must show that there is a genuine issue as to the existence of an element of that party's case by submitting that quantum of evidence which would be sufficient to establish a *prima facie* case at trial. If the evidence is merely colorable or not significantly probative, summary judgment may be granted. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248–50, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986); *Young v. General Foods Corp.,* 840 F.2d 825, 828 (11th Cir.1988), *cert. den.* 488 U.S. 1004, 109 S.Ct. 782, 102 L.Ed.2d 774 (1989); *Kramer v. Unitas,* 831 F.2d 994, 997 n. 10 (11th Cir.1987). The genuine issue must be one of material fact. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510.

## III. The Preference Claims

### A. *Whitacre Sunbelt's Preference Claim*

Mr. Ragsdale seeks to avoid the transfer of $335,720.00 from Whitacre Sunbelt to Bank South under 11 U.S.C. § 547(b) and to recover that amount from Bank South and Mr. Pope under the provisions of 11 U.S.C. § 550. The relevant provisions of the statutes in effect at the time Whitacre Sunbelt and Whitacre International filed for bankruptcy relief read as follows:

Section 547(b)—

> Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property,
>
> (1) to or for the benefit of a creditor;
>
> (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—

(A) on or within 90 days before the date of the filing of the petition; or

(B) *between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider;*

(5) that enables such creditor to receive more than such creditor would if

(A) the case were a case under chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

11 U.S.C. § 547(b) (1993) (emphasis added)

Section 550(a)—

Except as otherwise provided in this section, to the extent that a transfer is avoided under section 544, 545, 547, 548, 549, 553(b), or 724(a) of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from—

(1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or

(2) any immediate or mediate transferee of such initial transferee.

11 U.S.C. § 550(a) (1993)

The transfer at issue took place more than ninety days and less than one year before Whitacre Sunbelt filed its petition for bankruptcy relief. Therefore, Whitacre Sunbelt's preference claim is predicated on the expanded reachback of 11 U.S.C. § 547(b)(4)(B).

■ Defendants argue that they are entitled to summary judgment on the preference claim by Whitacre Sunbelt because the expanded reachback is not available as a matter of law. First, Mr. Pope contends that the amendments to 11 U.S.C. § 550 in the Bankruptcy Reform Act of 1994, Pub.L. No. 103–394, 108 Stat. 4106, 4121 (1994) (hereinafter the "Reform Act"), clarify the law such that § 550 precludes recovery against non-insider transferees, if the transfer took place more than ninety days before bankruptcy. Second, both defendants Pope and Bank South argue that Mr. Whitacre was not a creditor of Whitacre Sunbelt, so that there is no insider creditor to qualify for the expanded reachback of § 547(b)(4)(B).

In 1989, the Seventh Circuit held that trustees may recover transfers that a debtor makes to a non-insider between ninety days and one year prior to filing bankruptcy, where such transfers benefit an insider guarantor. *Levit v. Ingersoll Rand Fin. Corp. (In re V.N. Deprizio Constr. Co.),* 874 F.2d 1186 (7th Cir.1989). *Deprizio* was followed by a number of Circuits.[2] The Eleventh Circuit adopted the *Deprizio* rationale in *Galloway v. First Ala. Bank (In re Wesley Indus., Inc.),* 30 F.3d 1438, 1441 (11th Cir. 1994), about six weeks before the Reform Act was signed into law. The Reform Act effectively overruled *Deprizio.* In that legislation, Congress amended § 550 of the Code to provide that if a transfer made for the benefit of an insider creditor during the expanded reachback period were avoided under § 547(b), the trustee could not seek recovery under § 550(a) from a transferee that was not an insider. The legislative history of the amendment reads, "This section overrules the *Deprizio* line of cases and *clarifies* that non-insider transferees should not be subject to the preference provisions of the Bankrupt-

**2.** *See Official Unsecured Creditors Comm. of Sufolla, Inc. v. U.S. Nat'l Bank of Oregon (In re Sufolla, Inc.),* 2 F.3d 977, 986 (9th Cir.1993); *Southmark Corp. v. Southmark Personal Storage, Inc. (In re Southmark Corp.),* 993 F.2d 117, 120 (5th Cir.1993); *Ray v. City Bank & Trust Co. (In re C–L Cartage Co.),* 899 F.2d 1490, 1495 (6th Cir.1990); *Lowrey v. First Nat'l Bank of Bethany (In re Robinson Bros. Drilling, Inc.),* 97 B.R. 77,

82 (W.D.Okla.1988), *aff'd Manufacturers Hanover Leasing Corp. v. Lowrey (In re Robinson Bros. Drilling, Inc.),* 892 F.2d 850 (10th Cir.1989); *see also Travelers Ins. Co. v. Cambridge Meridian Group, Inc. (In re Erin Food Svcs., Inc.),* 980 F.2d 792, 799 (1st Cir.1992) ("for present purposes, we assume, without deciding, that *Deprizio* correctly interprets the legislative directives to be applied to the present claim").

cy Code beyond the 90–day statutory period." H.R.Rep. No. 103–385 at 44–45 (1994), *reprinted in* 1994 U.S.C.C.A.N. 3340, 3353 (emphasis added). Mr. Pope argues that the amendment should be given retroactive effect, since the legislative history speaks of the amendment as "clarifying" the law. This argument is not supported by the terms of the Reform Act. Section 702(a) of the Reform Act states, "Except as otherwise provided in subsection (b), this Act shall take effect on the date of the enactment." Section 702(a), Pub.L. No. 103–394, 108 Stat. 4106, 4121 (1994). The date of enactment of the legislation was October 22, 1994. Section 702(b) lists five specific sections of the Reform Act with different effective dates, and the provision amending § 550 is not included in the list. The clear inference is that Congress did not intend to overrule *Deprizio* retroactively. *See Psychotherapy and Counseling Ctr., Inc. v. Shalala (In re Psychotherapy and Counseling Ctr., Inc.),* 195 B.R. 536, 541 (Bankr.D.C.1996); *Rosen v. Air Forwarding Systems, Inc. (In re Air Forwarding Systems, Inc.),* 176 B.R. 638, 639 (Bankr. M.D.Fla.1995). Since Whitacre Sunbelt filed its petition for bankruptcy relief on February 9, 1994, some eight months before the effective date of the Reform Act, *Wesley Industries* is still the controlling law in this adversary proceeding. Thus, Defendant Pope's motion for summary judgment based on the Reform Act must be denied.

■ The more difficult issue is whether Mr. Whitacre was a creditor of Whitacre Sunbelt. Mr. Whitacre was an insider of Whitacre Sunbelt, but unless he was also a creditor of Whitacre Sunbelt, the one-year period in § 547(b)(4)(B) does not apply and Whitacre Sunbelt's preference claim fails.

A creditor is someone who has a claim, and a claim is broadly defined in the Bankruptcy Code as a right to payment, including a contingent right to payment. 11 U.S.C. §§ 101(5), (10); *see also Johnson v. Home State Bank,* 501 U.S. 78, 83, 111 S.Ct. 2150, 2154, 115 L.Ed.2d 66 (1991) (Congress intended "to adopt the broadest available definition of 'claim.' ") Mr. Whitacre was the maker of the note to Bank South, and Mr. Pope was the guarantor of the note. Mr. Whitacre, Whitacre Sunbelt and Whitacre International signed an indemnification agreement, providing that they would indemnify Mr. Pope for any amount he had to pay on his guaranty.

■ Defendants persuasively argue that Mr. Whitacre did not have a contingent claim against Whitacre Sunbelt. As the maker of the note, Mr. Whitacre was principally liable for the entire obligation to Bank South. Under Georgia law, the principal maker of a note has a duty to pay and to hold any guarantors harmless. Pursuant to O.C.G.A. § 10–7–41 (1994), a guarantor who pays an obligation has a claim against the nonpaying principal. *See Fabian v. Dykes,* 214 Ga.App. 792, 794, 449 S.E.2d 305, 307 (1994). When the principal maker pays an obligation, he does not have a claim against his guarantors.

Did the indemnification agreement give Mr. Whitacre a contingent claim against Whitacre Sunbelt? The indemnification agreement provides that Mr. Whitacre, Whitacre International, and Whitacre Sunbelt are jointly and severally liable to Mr. Pope for any amount he shall have to pay on his guaranty. ["Whitacre, Whitacre International and Whitacre–Sunbelt, hereby, jointly and severally, agree to indemnify and hold harmless Pope, his successors and assigns, of, from and against any and all losses, claims, damages, liabilities, demands, costs or expenses (including reasonable attorney's fees) now existing or hereafter arising and in any manner connected with the Guaranty by Pope of the Loan."] The issue then is whether Mr. Whitacre would have had a contribution claim against Whitacre Sunbelt under Georgia law, if Mr. Whitacre had paid Bank South, or if Mr. Pope had paid Bank South and Mr. Whitacre had reimbursed Mr. Pope in full.

■ Georgia law provides that in cases of joint and several liability, "where all are bound to bear the common burden and one

has paid more than his share, he shall be entitled to contribution from the others." O.C.G.A. § 23–2–71 (1982). The doctrine of contribution "is not founded upon contract, but upon principles of equity, and assists in the fair and just division of losses, preventing unfairness and injustice." *Horton v. Continental Cas. Co.,* 72 Ga.App. 594, 597, 34 S.E.2d 605, 607 (1945). Since contribution is based on the "highest equitable principles," when equity demands it, an exception arises to the general rule of implying contribution from joint and several liability. *Davis v. Perkins,* 178 Ga. 195, 199–200, 172 S.E. 562, 564 (1934). This exception requires "taking into account the respective benefits accruing to each joint obligor which accrued or resulted to him from the proceeds of the transaction in which the indebtedness was created." *Id.*

In the present case, the three co-indemnitors, Mr. Whitacre, Whitacre International, and Whitacre Sunbelt, did not bear an equal burden. Mr. Whitacre, as maker, had an obligation to Bank South to pay the note and an obligation to reimburse Mr. Pope, as guarantor. The record is clear that Mr. Whitacre turned over the loan proceeds to Whitacre International, not Whitacre Sunbelt. The record also shows that Mr. Whitacre and Whitacre International understood that Whitacre International would pay Bank South. There is no similar obligation of Whitacre Sunbelt. Plaintiff Ragsdale points out that Whitacre International used some $67,000.00 of the proceeds from the Bank South $330,000.00 loan to pay part of Whitacre International's debt to Whitacre Sunbelt. Mr. Ragsdale argues that Whitacre Sunbelt thus received a benefit, and that this fact would entitle Mr. Whitacre to assert a claim of contribution against Whitacre Sunbelt. This argument has no merit. Whitacre International's use of a portion of the loan proceeds to satisfy part of its debt to Whitacre Sunbelt did not give rise to any contribution obligation on the part of Whitacre Sunbelt to pay Mr. Whitacre.

If Mr. Whitacre had paid Bank South, he would not have a claim against Whitacre Sunbelt. As maker of the note, he had an independent duty to pay Bank South, and this was not a burden commonly borne by Mr. Whitacre and Whitacre Sunbelt. Likewise, if Mr. Pope had paid the note and Mr. Whitacre had paid Mr. Pope, Mr. Whitacre would not have had a claim for contribution against Whitacre Sunbelt. Mr. Whitacre had an independent duty to pay Mr. Pope as the guarantor of Mr. Whitacre's note. Stepping back, common sense dictates that there is no common burden. If a maker cannot sue a guarantor, it makes sense that he cannot assert a claim against one who indemnifies a guarantor. Given Mr. Whitacre's role as maker and principal obligor, the indemnification agreement does not provide him with a claim against Whitacre Sunbelt.

The parties have not found any cases where the maker of a note was also a co-indemnitor and where the maker had a contribution claim against a co-indemnitor of a guarantor. In a supplemental brief, Mr. Ragsdale argued that the case of *Herrington v. Wimberly,* 177 Ga. 536, 170 S.E. 670 (1933), supports the proposition that the original maker of a note has a right of contribution against other parties who become jointly and severally liable with the maker under a separate agreement. The Court has carefully reviewed this case and concludes that it does not support a right of contribution by Mr. Whitacre against Whitacre Sunbelt in the case at bar. In *Herrington,* the original maker was not the plaintiff, and the original maker was not asserting a contribution claim. The case supports the proposition that if co-obligors have an agreement among themselves which is inconsistent with implying a right of contribution (such as an agreement by one party to assume the entire obligation), the agreement defeats the right of contribution.

In conclusion, there is no "common burden" between Mr. Whitacre and Whitacre Sunbelt, because Mr. Whitacre as the maker is liable to Bank South for the full amount of the obligation and is liable to the guarantor Mr. Pope for the full amount if Mr. Pope pays the loan. Since Mr. Whitacre as the

maker is principally liable for the entire obligation, he could not pay more than his "fair share," even if he were called upon to pay the full amount. Mr. Whitacre has no contingent claim for contribution against Whitacre Sunbelt and is not a contingent creditor of Whitacre Sunbelt. Thus, Mr. Whitacre is an insider but not a creditor of Whitacre Sunbelt. Without an insider creditor receiving a benefit from the transfer to Bank South, the extended reachback under § 547(b)(4)(B) is not available, and Mr. Ragsdale's preference claim against Bank South and Mr. Pope fails.

B. *Whitacre International's Preference Claim Against Bank South and Pope*

■ Plaintiff Levine claims that Whitacre International's transfer of $335,720.00 to Bank South should be set aside as a preference, and that he is entitled to a judgment against Bank South and Mr. Pope. Unlike the case of Whitacre Sunbelt, here there is a transfer for the benefit of an insider creditor. Mr. Whitacre was an insider of Whitacre International, and he was a creditor of Whitacre International. He had borrowed the $330,000.00 from Bank South and endorsed the proceeds over to Whitacre International. The parties agree that Whitacre International was to repay this sum to Bank South. Whitacre International's payment to Bank South benefited Mr. Whitacre by extinguishing his liability on the note. Thus, the extended reachback period of one year applies to Whitacre International's preference claim.

■ However, defendants Pope and Bank South and Plaintiff Ragsdale all argue that the earmarking doctrine bars Plaintiff Levine, as trustee for the estate of Whitacre International, from any recovery on a preference theory against Bank South or Mr. Pope. Defendants and Mr. Ragsdale argue that the $335,720.00 paid to Bank South was "earmarked" by Whitacre Sunbelt to repay the debt to Bank South, and that the funds never became a part of Whitacre International's estate.

■ The earmarking doctrine is accepted as a valid defense against preference claims.

*Coral Petroleum, Inc. v. Banque Paribas–London,* 797 F.2d 1351, 1356 (5th Cir.1986). It is an equitable doctrine which provides that when a new lender makes a loan to enable a debtor to pay a specified former lender, those funds are "earmarked" for that creditor. Thus, if the debtor has no control over the disposition of the earmarked funds, the funds do not become part of the debtor's estate, and no preference occurs. The origins and rationale of the doctrine are explained in *In re Bohlen Enterprises, Ltd.:*

> The earmarking doctrine is entirely a court-made interpretation of the statutory requirement that a voidable preference must involve a "transfer of an interest of the debtor in property." ...

> In every earmarking situation there are three necessary dramatis personae. They are the "old creditor," ... the "new creditor" or "new lender" who supplies the funds to pay off the old creditor, and the debtor.

> When new funds are provided by the new creditor to or for the benefit of the debtor for the purpose of paying the obligation owed to the old creditor, the funds are said to be "earmarked" and the payment is held not to be a voidable preference.

859 F.2d 561, 565 (8th Cir.1988). The *Bohlen* court suggested that the doctrine should be limited and set forth three requirements for a transaction to qualify for the earmarking doctrine:

(1) the existence of an agreement between the new lender and the debtor that the new funds will be used to pay a specified antecedent debt,

(2) performance of that agreement according to its terms, and

(3) the transaction viewed as a whole (including the transfer in of the new funds and the transfer out to the old creditor) does not result in any diminution of the estate.

*Id.* at 566. Another commonly recognized factor in the earmarking analysis is a lack of

dispositive control by the debtor over the transferred property. *Steinberg v. NCNB Nat'l Bank (In re Grabill)*, 135 B.R. 101, 110 (Bankr.N.D.Ill.1991).

The parties all agreed at oral argument that defendants had the burden of proof as to the applicability of the earmarking defense.[3] The material facts on this issue are not in dispute. As previously stated, on June 25, 1993, Whitacre Sunbelt transferred $335,-720.00 by check payable to Whitacre International. The check request stated that the check was needed for a "loan to pay off bank note at Bank South, check to be made out to Whitacre International." The stub on the check from Whitacre Sunbelt to Whitacre International bore the notation "WII0625 loan." On the same day, Whitacre International drew a check payable to Bank South in the amount of $335,720.00, and typewritten on that check stub was "Whitacre International Note Payment." Robert Humberstone, CFO of Whitacre International, immediately delivered the check to Bank South. These June 1993 transactions were reflected in Whitacre International's records as a satisfaction of its liability to Bank South and the creation of an identical liability from Whitacre International to Whitacre Sunbelt.

While Mr. Levine suggests in his brief that there are disputed facts, the Court concludes that the material facts relevant to the earmarking defense are not in dispute. Although Mr. Whitacre did not remember at his deposition why the money was put through Whitacre International before paying Bank South, he testified that he understood that the money transferred from Whitacre Sunbelt to Whitacre International would go directly to Bank South. (Whitacre Dep. at 31, 41). Mr. Humberstone stated in his affidavit that Mr. Whitacre instructed him that Whitacre International could not use these funds for any purpose other than the payment of the Bank South obligation. (Humberstone Aff. ¶ 13, 14).

The criteria in *Bohlen* provide a useful framework for analyzing the facts in this case. First, there was an agreement between Whitacre Sunbelt (the new lender) and Whitacre International (the debtor) that the new funds would pay a specified antecedent debt, i.e., the debt of Mr. Whitacre and Whitacre International to Bank South. Second, the parties performed as agreed. Third, the transaction viewed as a whole did not result in any diminution of the estate of Whitacre International. Whitacre Sunbelt was simply substituted for Bank South as a creditor of Whitacre International. Finally, Whitacre International at no time possessed dispositive control over the funds, as Whitacre International was to use the funds for no purpose other than repayment of the Bank South obligation.

The facts here are comparable to those in other cases where courts have found earmarking. In *Dubis v. Heritage Bank and Trust Co. (In re Kenosha Liquidation Corp.)*, 158 B.R. 774 (Bankr.E.D.Wis.1993), two principals of the debtor corporation, who had guaranteed a note ·of the corporation, borrowed money from another company of which they were also principals to repay the debtor corporation's debt; the money passed through the debtor corporation. The check notations were variously "pay off loan" and "Business Note Payoff." The Court stated, "Other than the notations on the two checks regarding the purpose of the funds, no written instructions existed as to the disposition of the funds that the debtor borrowed. [One of the principals] testified that the agreement between him[self] and [the other principal] to pay back the loan was verbal. Neither corporation ... prepared any minutes or resolutions mentioning the use of the funds to pay off the note to [the bank]." *Id.* at 777. The

---

**3.** The courts are not in agreement as to who has the burden of proof in cases involving the earmarking doctrine. Some courts have held that the burden is on the defendant to "produce evidence that the transfer did not involve property of the debtor's estate." *Wasserman v. Village Assocs. (In re Freestate Management Svcs., Inc.)*, 153 B.R. 972, 981–82 (Bankr.D.Md.1993). Other courts have held that since earmarking bears upon an element of the preference claim, the burden of proving the doctrine's nonapplicability is upon the trustee. *Tolz v. Barnett Bank, N.A. (In re Safe–T–Brake of S. Fla., Inc.)*, 162 B.R. 359, 364–65 (Bankr.S.D.Fla.1993).

funds were held to be earmarked. *Id.* At 780. *See also Maggio v. Manufacturers Hanover Trust Co. (In the Matter of Oliver's Stores, Inc.),* 112 B.R. 671 (Bankr.D.N.J. 1989), *aff'd* 1990 WL 102353 (D.N.J.1990) (express, oral agreement between debtor and lender that loan would be used to pay off particular creditor).

Mr. Levine cites the recent case. of *Rabin v. B & M Realty Corp. (In re Plechaty),* 201 B.R. 486 (Bankr.N.D.Ohio 1996), to support his argument against earmarking. *Plechaty* stands for the proposition that earmarking does not apply when the debtor, rather than the new lender, selects which of the debtor's creditors are to be paid. The facts in *Plechaty* are distinguishable from the facts in the case at bar. In *Plechaty,* the debtor was a successful businessman who several years earlier had transferred his assets to various family members, but primarily to his wife, Mrs. Plechaty. Whenever the debtor needed money, his wife would "loan" it to him. His wife was blind, did not manage her own financial affairs, considered all the money to belong to her husband, and did not maintain records of the "loans" to him. The debtor drafted a check for his wife's signature to make a payment to one of his creditors, and then recorded this transfer as a loan from his wife to himself. The debtor later had the records of the transaction changed in the corporate books to reflect the payment as a loan from Mrs. Plechaty to the creditor. The Court held that the payment from the husband to his creditor was a preference. The payment was held not to be earmarked, because there was every indication that the debtor could have selected a different payee. Mr. Levine argues that because an officer of Whitacre International, Robert Humberstone, structured the transfer of funds, Whitacre International could have used the funds as it wished. To the contrary, in both the check request and the check stub, Whitacre Sunbelt specified that the funds were to be used by Whitacre International to pay Bank South and this is precisely how they were used. The quintessence of control under the earmarking doctrine is the selection of the payee. Whitacre Sunbelt selected the payee, and there is no indication that Whitacre International could have used the funds to pay a different creditor.

Mr. Levine raises two arguments challenging the application of the earmarking doctrine. First, he argues that earmarking is intended only to be available in situations where parties who are secondarily liable pay off an obligation. This defense is without merit, as there is ample case law extending the doctrine to new creditors. *Grubb v. General Contract Purchase Corp.,* 18 F.Supp. 680, 682 (S.D.N.Y.1937), *aff'd* 94 F.2d 70 (2d Cir.1938); *Sun Railings, Inc. v. Silverman (In re Sun Railings, Inc.),* 5 B.R. 538, 539 (Bankr.S.D.Fla.1980); *see also* 4 *Collier on Bankruptcy* ¶ 547.03 at 547–28 (15th ed. 1987). Moreover, Whitacre Sunbelt is not simply a new creditor in this situation; through the indemnification agreement, Whitacre Sunbelt is subject to liability to Mr. Pope as an indemnitor, should Mr. Pope be called upon to pay the guarantee. Thus, this situation is more analogous to a guarantor paying the debt of the principal than to a new and previously uninvolved third party extending credit to the debtor to repay an existing creditor.

■ Second, Mr. Levine argues that the earmarking doctrine should not apply, on the grounds that Whitacre Sunbelt, while insolvent, violated Georgia's public policy by transferring funds to Whitacre International for the benefit of an insider. Bank South responds by arguing that Georgia public policy favors payment to creditors and the right of a debtor to prefer one creditor over another, even when the debtor corporation is insolvent, as long as the debtor is not out of business. *See* O.C.G.A. § 18–2–40 (1991) (right to prefer creditors); *see also Ware v. Rankin,* 97 Ga.App. 837, 838–39, 104 S.E.2d 555, 558–59 (1958). In the present case, Whitacre Sunbelt was still in business in June of 1993, when it transferred funds to Whitacre International for Bank South. Bank South further responds that if the trustee is correct and Whitacre International

wrongfully acquired the funds, then Whitacre International never had any rights to the money, and under Georgia law a constructive trust would be imposed in favor of Whitacre Sunbelt. *See Edwards v. United Food Brokers, Inc.,* 195 Ga. 1, 6–7, 22 S.E.2d 812, 816 (1942). Bank South contends that when a debtor transfers money in which it has only the interest of a trustee, the estate of that debtor is not diminished. 11 U.S.C. § 541(d); *see, e.g., Begier v. Internal Revenue Service,* 496 U.S. 53, 55, 110 S.Ct. 2258, 2261, 110 L.Ed.2d 46 (1990) (no preference as funds in debtor's general account were in trust for payment of withholding taxes to IRS). Thus, if Whitacre International acquired the money wrongfully from Whitacre Sunbelt and then passed it on to Bank South, the money was held in trust for Whitacre Sunbelt, the estate of Whitacre International was not harmed by the transfer, and no preference resulted. This argument is logical. Why should Whitacre International be able to recover funds it should not have received in the first place? The claims here, if any, belong to Whitacre Sunbelt, the entity which parted with the funds.

In conclusion, even construing the facts in the light most favorable to Mr. Levine, the Court finds that the undisputed facts establish that the money Whitacre Sunbelt transferred to Whitacre International was earmarked for paying the Bank South obligation. The funds were thus not property of debtor Whitacre International, and its preference claim against Bank South and Mr. Pope fails.

### IV. The Claim by Whitacre Sunbelt to Set Aside a Fraudulent Transfer to Bank South

▮ In its motion for summary judgment, Bank South argues that it is entitled to a summary judgment on the claim by Mr. Ragsdale as trustee of Whitacre Sunbelt to set aside the transfer to Bank South as a

fraudulent conveyance under 11 U.S.C. § 548.[4] Bank South argues that Whitacre Sunbelt would have to show that it received less than a reasonably equivalent value in exchange for the transfer. 11 U.S.C. § 548(a)(2)(A). "Value" is defined in § 548(d)(2)(A) to include satisfaction of a debt of the debtor, and the payment to Bank South satisfied the obligations of Whitacre Sunbelt to Mr. Pope under the indemnity agreement. *See Tidwell v. AmSouth Bank, N.A. (In re Cavalier Homes of Ga., Inc.),* 102 B.R. 878, 886 (Bankr.M.D.Ga.1989) (satisfaction of contingent liability under guaranty was reasonably equivalent value). The plaintiff did not offer any meaningful opposition to Bank South's motion for summary judgment on this claim, and summary judgment here is appropriate.

In the briefs in support of the summary judgment motions, the parties addressed whether Mr. Ragsdale, as trustee of Whitacre Sunbelt, could recover the amount transferred from Bank South as the "initial transferee" under 11 U.S.C. § 550(a)(1), or as an "immediate or mediate transferee" under § 550(a)(2). Section 550 sets forth the transferees from whom a trustee may recover property where a transfer has been avoided under § 547, § 548 or the other avoiding powers of the Bankruptcy Code. Since the Court has concluded that Plaintiff Ragsdale cannot establish a voidable transfer, the Court need not determine whether Bank South should be considered an "initial transferee" under § 550.

### V. Motion by Trustee of Whitacre Sunbelt to Amend Complaint

After the hearing on the summary judgment motions, Plaintiff Ragsdale as trustee of the estate of Whitacre Sunbelt filed a motion for leave to amend the complaint in which he seeks to add five counts (counts 7 through 11). The claims alleged in the motion for leave to amend the complaint arise

---

**4.** Counsel for the Trustee of Whitacre International stated at oral argument that the estate of Whitacre International was not asserting a fraud- ulent transfer claim against Bank South. (Tr. at 33).

out of the same facts and same transactions as originally pled, but now Mr. Ragsdale seeks to set aside the transfer from Whitacre Sunbelt to Whitacre International. Previously, Mr. Ragsdale as trustee for Whitacre Sunbelt and Mr. Levine as trustee for Whitacre International sought as joint plaintiffs to set aside the transfer to Bank South and to recover from Bank South and Mr. Pope. Now, Mr. Ragsdale seeks (1) to set aside the transfer of the $335,720.00 to Whitacre International as a fraudulent transfer under 11 U.S.C. § 548, and (2) to set aside this transfer to Whitacre International as a preference under 11 U.S.C. § 547. The remaining new counts plead a right to recover under § 550 from both Mr. Pope and Bank South as "entities for whose benefit the transfer was made" under 11 U.S.C. § 550(a)(1), and, alternatively, to recover from Bank South as the mediate or immediate transferee of Whitacre International pursuant to 11 U.S.C. § 550(a)(2).

■ Fed.R.Civ.P. 15(a), made applicable to this proceeding under Fed.R.Bankr.P. 7015, provides that leave to amend shall be freely granted "whenever justice so requires." The policy behind the federal rules is to permit "liberal amendment to facilitate determination of claims on the merits and to prevent litigation from becoming a technical exercise in the fine points of pleading." *Dussouy v. Gulf Coast Investment Corp.*, 660 F.2d 594, 598 (Former 5th Cir.1981). However, the Supreme Court has articulated a number of reasons that justify denial of leave to amend a complaint, such as bad faith or dilatory motive on the part of the movant, undue prejudice to the opposing party by virtue of the allowance of the amendment, and futility of amendment. *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962). It is well established that, "An amendment is a 'futile gesture' if the amended pleading could not survive a motion for summary judgment." *Wilson v. American Trans Air, Inc.*, 874 F.2d 386, 392 (7th Cir.1989); *see also Addington v. Farmer's Elevator Mut. Ins. Co.*, 650 F.2d 663, 666–67 (5th Cir. Unit A 1981), *cert. den.* 454

U.S. 1098, 102 S.Ct. 672, 70 L.Ed.2d 640 (1981); *Demars v. General Dynamics Corp.*, 779 F.2d 95, 99 (1st Cir.1985).

The motion to amend was not brought in bad faith. All of the parties acknowledge that the amended claims involve the same transfers that were the subject of the earlier pleadings and the motions for summary judgment. The key question is whether these amendments are futile, i.e., whether they could survive a motion for summary judgment.

■ The motion to add a claim to set aside Whitacre Sunbelt's transfer to Whitacre International as a preference has the same problem as Whitacre Sunbelt's original preference claim to set aside the transfer to Bank South. The transfer took place more than ninety (90) days before the bankruptcy was filed, and thus the preference claim depends on the availability of the expanded one-year reachback provision of § 547(b)(4)(B). Mr. Whitacre and Whitacre International were not contingent creditors of Whitacre Sunbelt under the indemnification agreement. Mr. Whitacre was liable for the full amount of the Bank South loan, as discussed in Part III(A) of this opinion. The record also shows that Whitacre International owed Whitacre Sunbelt a sum many times larger than the amount of $335,720.00 transferred from Whitacre Sunbelt to Whitacre International. Thus, one of the elements required in a preference claim, that the payment be in satisfaction of an antecedent obligation, is not present. It would be futile to allow this amendment to assert a preference claim against Mr. Levine, as trustee of Whitacre International.

■ The motion to add a claim to set aside the transfer from Whitacre Sunbelt to Whitacre International as a fraudulent conveyance under § 548 is also flawed. The claim requires plaintiff Ragsdale to show that the transfer was for less than reasonably equivalent value. 11 U.S.C. § 548(a)(2)(A). "Value" under § 548(d)(2)(A) includes satisfaction of a debt of the debtor, Whitacre

Sunbelt. Plaintiff's argument is that Whitacre Sunbelt made a loan to Whitacre International at a time when both companies were hopelessly insolvent, and an unsecured promise by a hopelessly insolvent Whitacre International to repay a loan is not reasonably equivalent value for a transfer of $335,720.00. This argument seems reasonable at first blush. However, the value is not the worth of Whitacre International's promise to repay Whitacre Sunbelt, but must include Whitacre International's promise to use the money to pay Bank South. Plaintiffs acknowledge that the payment to Whitacre International was intended to be used to pay Bank South. Whitacre Sunbelt was contractually obligated to hold Mr. Pope harmless with respect to the guaranty Mr. Pope had executed in favor of Bank South. The payment to Bank South satisfied Whitacre Sunbelt's obligation to Mr. Pope under the indemnification agreement. *See Tidwell v. AmSouth Bank, N.A. (In re Cavalier Homes of Ga., Inc.)*, 102 B.R. 878, 886 (Bankr.M.D.Ga.1989). Thus, based on the undisputed facts, Mr. Ragsdale cannot establish that Whitacre Sunbelt received less than a reasonably equivalent value in exchange for the transfer, and it would be futile to allow the amendment.

Bank South and Mr. Pope also oppose the motion to amend the complaint on the grounds that no recovery is possible under § 550(a)(1). Section 550 of the Bankruptcy Code governs whether, and to what extent, an avoidable transfer can be recovered from a particular party. Section 550 provides, in pertinent part, as follows:

Section 550(a)—

Except as otherwise provided in this section, to the extent that a transfer is avoided under Section ... 547, 548 ... of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from—

(1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or

(2) any immediate or mediate transferee of such initial transferee.

Section 550(b)—

The trustee may not recover under section (a)(2) of this section from—

(1) a transferee that takes for value, including satisfaction or securing of a present or antecedent debt, in good faith, and without knowledge of the voidability of the transfer avoided; or

(2) any immediate or mediate good faith transferee of such transfer.

11 U.S.C. § 550 (1993)

Whether a transferee is an initial transferee under § 550(a)(1) or an immediate transferee under § 550(a)(2) is an important distinction, because the initial transferee cannot raise the "good faith taker" defense provided under § 550(b). Section 550 protects a mediate or immediate transferee who has taken for value in good faith without knowledge of the voidability of the transfer. The "initial transferee" and the "entity for whose benefit such transfer was made" receive no such protection, and the trustee's power to recover from these entities is absolute.

Defendants correctly argue that if the transfer from Whitacre Sunbelt to Whitacre International is a fraudulent conveyance, then Bank South and Mr. Pope cannot be liable under § 550(a)(1). Bank South cannot be the "entity for whose benefit such transfer was made" under § 550(a)(1), because Bank South would be a subsequent transferee, and a subsequent transferee cannot be the benefitted entity. *Bonded Fin. Svcs., Inc. v. European Am. Bank*, 838 F.2d 890, 895–96 (7th Cir.1988). Mr. Pope could not be an "entity for whose benefit such transfer was made" because the benefit referred to in § 550(a)(1) must be determined by reference to the initial transfer. *Id.* The initial transfer is the transfer from Whitacre Sunbelt to Whitacre International. Mr. Pope only benefits if Whitacre International's promise to pay Bank South is material and of value, in which case there is no fraudulent conveyance.

While the Court is mindful of the policies favoring the allowance of amendments to pleadings, in this case amending the complaint would serve no useful purpose. Per-

mitting Plaintiff Ragsdale to amend the complaint would only prolong the litigation over issues that have already been fully litigated. A claim to set aside the transfer to Whitacre International will be no more successful than a claim to set aside the transfer to Bank South. There is still a missing element necessary for recovery under either a preference theory or on a fraudulent conveyance theory. Allowing the parties to amend the pleadings and re-state the claim would be futile.

## VI. Motion by Plaintiffs to Settle and Compromise

One of the other pending motions in this adversary proceeding is the motion filed by the two trustee-plaintiffs to approve their agreement to split whatever recovery either of them may ultimately obtain in this adversary proceeding. The defendants raised some concerns with this motion, and it has not been entirely clear what claims in this proceeding were being admitted or compromised by this joint motion. The Court had withheld approval of this agreement, pending a clearer understanding of what was being settled and whether the settlement should be approved under the standards of *Wallis v. Justice Oaks II, Ltd. (In re Justice Oaks II, Ltd.),* 898 F.2d 1544, 1549 (11th Cir.1990), *cert. den.* 498 U.S. 959, 111 S.Ct. 387, 112 L.Ed.2d 398 (1990). In view of the other rulings herein, the motion to compromise and settle will be denied as moot.

## VII. Conclusion

In accordance with the above reasoning, the motion by Plaintiff Levine as trustee of the estate of Whitacre International for summary judgment is DENIED; the motion by Plaintiff Ragsdale as trustee of the estate of Whitacre Sunbelt for summary judgment is DENIED; the motion by Defendant Bank South for summary judgment is GRANTED; the motion by defendant Pope for summary judgment is GRANTED; the motion by Defendant Pope to dismiss for improper joinder is moot; the motion by Plaintiff Ragsdale for late motion for summary judgment is DENIED [5]; the motion by Plaintiff Ragsdale for leave to amend the complaint is DENIED; and the motions by Plaintiffs Ragsdale and Levine to compromise and settle are hereby DENIED as moot.

A separate judgment will be entered consistent with this opinion.

[redacted]

5. After the summary judgment motions were filed and before Mr. Ragsdale filed his motion to amend the complaint, Mr. Ragsdale as trustee of Whitacre Sunbelt also filed a late summary judgment motion. In this motion, Mr. Ragsdale requested a judgment against Bank South or Whitacre International on a preference theory. This motion for late summary judgment does not appear to involve any claims that are not otherwise covered by the motion to amend the complaint or the other summary judgment motions. Accordingly, it too is denied.